664 A.2d 16

**MARYLAND DISABILITY LAW CENTER, INC.**

v.

**MT. WASHINGTON PEDIATRIC HOSPITAL, INC.**

**No. 1023, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Aug. 30, 1995.

**56**

Laurence J. Eisenstein (Swidler & Berlin, Gregg H. Levy, Neil A. Riemann, Covington & Burling, Washington, DC, C. Christopher Brown and Brown, Goldstein & Levy, Baltimore, on the brief), for appellant.

Ralph J. Moore, Jr. and Shea & Gardner, Washington, DC, and Robert D. Fleischner, Northampton, MA, for amicus curiae, Arc of Maryland, et al.

George T. Tyler (Ober, Kaler, Grimes & Shriver, on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and FISCHER and SALMON, JJ.

FISCHER, Judge.

Appellant, Maryland Disability Law Center (MDLC),[1] is a private non-profit corporation organized for the purpose of

---

1. MDLC is the federally mandated protection and advocacy entity established by the State of Maryland by way of Executive Order 01.01.1986.12 signed by Governor Harry Hughes on June 25, 1986.

protecting the rights of and advocating for individuals with developmental disabilities throughout Maryland. MDLC appeals from an injunction entered by the Circuit Court for Baltimore City (Kaplan, J.). Appellee and cross appellant is Mt. Washington Pediatric Hospital, Inc. (Mt. Washington), a private, non-profit corporation that operates a facility on Ashburton Street as part of its continuing care program for children with developmental disabilities. MDLC receives its responsibilities and authority from 42 U.S.C. § 6042(a)(2), Md.Code (1995), § 3–1001, of the Courts and Judicial Proceedings Article, and Executive Order 01.01.1986.12 dated June 25, 1986. One of MDLC's authorized functions is to investigate reports and allegations of abuse and neglect of persons with developmental disabilities.

In December 1992, MDLC personnel visited the Ashburton Street facility of Mt. Washington without apparent difficulty. Mt. Washington avers that, at the time of the December, 1992 visitation, MDLC had no knowledge of any real or alleged abuse or neglect and had no basis for a probable cause determination that such abuse or neglect existed. The underlying dispute arose when Mt. Washington attempted to relocate its operations at the Ashburton site to the former North Charles General Hospital. In order to relocate, Mt. Washington was required to obtain a Certificate of Public Need (CON) from the State Resource Planning Commission. By letter of January 11, 1993, MDLC intervened in the CON proceeding to oppose the relocation. In its letter, MDLC argued that the CON was unnecessary since the children should be discharged from Mt. Washington and placed in "family settings."

Mt. Washington avers that it was deceived by MDLC into supplying MDLC with information due to the mistaken belief that MDLC was interested in serving individual patients. In response to MDLC's opposition to Mt. Washington's CON application, on January 14, 1993, Mt. Washington promulgated a somewhat restrictive protocol for further visitations by MDLC personnel. On the same date, Mt. Washington filed a complaint seeking injunctive relief limiting MDLC's access to Ashburton and a declaratory judgment limiting MDLC's

rights as a Protection and Advocacy System (P & A system). MDLC thereupon filed a counterclaim, stating among other allegations that it "has received multiple reports of abuse and neglect of MDLC clients at Ashburton." MDLC further alleged that it believed those reports to be reliable and that Mt. Washington refused to permit MDLC to investigate those reports.

The parties filed cross motions for summary judgment, and on March 8, 1994, the circuit court issued its Memorandum Opinion and Order.

The circuit court denied Mt. Washington's motion for summary judgment and granted MDLC's motion for summary judgment. The court held that MDLC is Maryland's federally mandated P & A system for individuals with developmental disabilities and that it is entitled to access to Mt. Washington. The circuit court then requested that the parties endeavor to fashion a mutually acceptable plan consistent with the court's opinion and the Developmental Disabilities Act.[2] The circuit court also stated that if the parties fail to reach agreement, the court will conduct a further hearing. An agreement was not reached and, after further hearing on March 15, 1994, the circuit court entered the order that is the subject of this appeal. Although the court ostensibly enjoined Mt. Washington, both parties appealed. The circuit court injunction, in pertinent part, provides:

*Access to facility, patients and staff*

1. MDLC shall give prior notice within a reasonable time before visiting Mt. Washington; provided, however, that no prior notice need be provided for visits during normal visiting hours. However, attorney/advocates for MDLC shall not be required to provide the name or other identifying information regarding the patient(s) with whom they plan to meet, nor are MDLC agents to be required to otherwise justify or explain their contacts with patients.

---

**2.** The Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. §§ 6000 *et seq.*

2.   When visiting Mt. Washington, MDLC may visit any building's facility utilized by patients, including any living quarters; however, MDLC agents shall in no way interfere with ongoing therapy sessions, but may secure the name or identifying information of any patient who should seek to communicate with them.

3.   Mt. Washington shall permit agents of MDLC to have access to and the most effective communication possible with patients of Mt. Washington during mealtimes, break times, or such times and places as such patients are not occupied in a scheduled therapeutic activity.

4.   If MDLC so requests, Mt. Washington is to make available a private meeting room for use by MDLC in conferring with patients.  Mt. Washington shall cooperate in transporting the patients and arranging such meetings as required;  however, the agents of MDLC are hereby ordered to abide by the request of any patient to refuse or terminate such meetings.

5.   Mt. Washington . shall not require written retainer agreements from MDLC before permitting MDLC to interview a patient of Mt. Washington.

6.   Mt. Washington shall make available to the legal guardians or conservators and family members or other representatives of the Mt. Washington patients an explanation of MDLC's services, said explanation to be provided by MDLC at the time of admission of each patient to Mt. Washington and every six months thereafter.

7.   Mt. Washington shall permit staff to talk openly with MDLC about clients of MDLC.  With regard to any patient who is not a client of MDLC, Mt. Washington's staff need only provide the patient's name and room number, the names of any doctor, nurse, or attendant caring for the patient, the name of any guardian or legal representative, and any other general non-confidential information.  Further information from staff about non-clients shall be provided according to the procedure for accessing patient records as described in Paragraphs 11 through 19.

8. Mt. Washington shall permit MDLC to do its own investigation of abuse or neglect including interviewing staff witnesses as provided above in Paragraph 7, patient witnesses, observing the physical environment, and reviewing patient records as defined in Paragraph 11.

9. Mt. Washington may supply MDLC with current schedules in effect at Mt. Washington, and MDLC is hereby ordered to seek to avoid interference with such schedules as are provided to them, to the maximum extent possible in conjunction with their duties. It is anticipated by the court that MDLC investigations based on reported abuse or neglect or probable cause shall be made by MDLC during normal visiting hours, and so as not to interfere with a scheduled therapeutic activity. However, if MDLC receives reports of abuse or neglect or has probable cause to believe that there exists conditions of abuse or neglect during the nighttime hours or during or at the location of therapeutic activities, then MDLC shall, after notice to Mt. Washington, be permitted to engage in a full and complete investigation during those times or at those locations.

10. Mt. Washington shall treat any experts or consultants retained by MDLC, whether independent contractors or employees, just as Mt. Washington must treat other MDLC employees.

*Access to Records*

11. For purposes of this injunction, the term 'records' means both 'records' as described by 42 U.S.C. § 6042(e) and verbal responses about non-clients elicited by MDLC from Mt. Washington's staff which are generally considered the equivalent of medical records. In addition, 'abuse' means (1) the sustaining of any physical injury by a patient as a result of cruel or inhumane treatment or malicious act, (2) physical injury under circumstances that indicate a patient's health or welfare is significantly harmed or at risk of being significantly harmed, or (3) sexual abuse of a patient, whether physical injuries are sustained or not. 'Neglect' means (1) the willful deprivation of a patient of adequate food, clothing, essential medical treatment or habi-

litative therapy, shelter, or supervision, or (2) leaving a patient unattended, or other failure to give proper care and attention to a patient under circumstances that indicate that the patient's health or welfare is significantly harmed or placed at risk of significant harm.

12. MDLC shall have access to all records at Mt. Washington of any person with developmental disabilities who is a client of MDLC if such person, or the legal guardian, conservator, or other legal representative of such person has authorized MDLC to have such access.

13. The following shall constitute satisfactory authorizations for records access which Mt. Washington shall accept from MDLC as valid:

(a) a signed and dated statement that 'I hereby retain the Maryland Disability Law Center, Inc. (MDLC) to represent [name of client] to fully investigate all relevant facts, and obtain copies of all relevant records and other documents.';

(b) a signed and dated Child in Need of Assistance (CINA) Order appointing MDLC or any of its representatives to represent a child and inspect his or her records; or

(c) any other form that substantially resembles (a) or (b).

If these authorizations refer to a specific employee of MDLC, Mt. Washington shall nonetheless accept them as sufficient to authorize access by any MDLC employee or consultant if the person authorized is an MDLC employee or agent.

14. MDLC shall also have access to all records at Mt. Washington of any person with developmental disabilities

(a) who by reason of the mental or physical condition of such person, is unable to authorize MDLC to have such access;

(b) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and

(c) with respect to whom there is probable cause to believe that such person has been subject to abuse or neglect.

15. MDLC shall also have access to all records at Mt. Washington of any person with developmental disabilities, regardless of whether he or she has a legal guardian, conservator, or other legal representative, with respect to whom

(a) MDLC has probable cause to believe the health or safety of the individual is in serious and immediate jeopardy;

(b) MDLC has contacted the legal guardian, conservator, or other legal representative;

(c) MDLC has offered assistance to the legal guardian, conservator, or other legal representative to resolve the situation; and

(d) the legal guardian, conservator, or other legal representative has failed to act or refused to act on behalf of the person with development disabilities.

16. Whenever probable cause is a prerequisite for MDLC's access to staff or records at Mt. Washington, as specified in Paragraphs 14 and 15, MDLC shall apply *ex parte* to this Court for an order directing staff to answer questions and/or to produce records.

17. MDLC is not required to reveal to Mt. Washington the source of its knowledge of events of abuse or neglect, but the time, place and details of such events and identity of the disabled individual(s) must be set forth in the court order.

18. If the court finds such probable cause based on a general policy of Mt. Washington, as opposed to a specific instance or instances of abuse or neglect, the court order shall by its terms so specify and provide seven (7) days from its date to Mt. Washington to show cause why the information sought should not be made available to MDLC.

19. Mt. Washington shall provide these records to MDLC notwithstanding the provisions of any state law that

might otherwise prohibit access to such records, including but not limited to Md.Health Occ.Code Ann. § 14–501.

In this appeal, MDLC raises six issues for our review as follows:

I. Does the Circuit Court's Injunction violate the explicit statutory language of the DD Act by eliminating a P & A system's authority to investigate in response to reports and complaints it receives about abuse and neglect?

II. Does the Circuit Court's Injunction violate the DD Act by requiring prior judicial approval of the P & A system's abuse and neglect investigations?

III. Does the Circuit Court's Injunction violate the DD Act by requiring a contested hearing on the P & A system's probable cause determination before the P & A system can investigate abuse and neglect allegations that involve general practices as opposed to specific incidents?

IV. Should the federal DD Act's terms "abuse" and "neglect" be defined by reference to an amalgam of unrelated state statues or by reference to a related federal statute?

V. Does the DD Act require a federally mandated P & A system to disclose to the subject of its investigation details of the allegations of abuse or neglect that prompted its investigation?

VI. Does the DD Act permit a federally mandated P & A system to obtain basic information about a facility's residents with developmental disabilities so that it can decide whether there is a need to conduct a formal investigation?

In its cross-appeal, Mt. Washington presents five issues:

1. Does the Act of Congress, as amended, operate so as to pre-empt State statutory law and does it mandate the State to confer protection and advocacy system authority over a private hospital such as Mt. Washington which did not receive federal funds?

2. Does the Executive Order of 1986 have any effect upon a private hospital which is not a unit of State government and can it, in effect, operate to repeal statute law?

3. Does the Governor of Maryland have the power by contract representation or assurance, to bind a non-party and to exempt that non-party from the application of statute law?

4. If, *arguendo*, the Injunction is affirmed, is court oversight of MDLC determinations of probable cause unlawful? Is it unlawful to use State statutory definitions of terms used, without definition, in the Act of Congress?

5. If, *arguendo*, the Injunction is affirmed, is it lawful to hold that a non-specific CINA order is sufficient to authorize disclosure of confidential hospital records and reports?

## DISCUSSION

█ The Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. §§ 6000 *et seq.* (the DD Act), is a federal law that creates a

> federal-state grant program whereby the Federal Government provides financial assistance to participating States to aid them in creating programs to care for and treat the developmentally disabled. Like other federal-state cooperative programs, the Act is voluntary and the States are given the choice of complying with the conditions set forth in the Act or forgoing the benefits of federal [funding].

*Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 11, 101 S.Ct. 1531, 1536–37, 67 L.Ed.2d 694 (1981). The DD Act lists conditions for the receipt of federal funds. Section 6042 of the DD Act states that "[i]n order for a State to receive an allotment ... the State must have in effect a system to protect and advocate the rights of persons with developmental disabilities; ..." 42 U.S.C. § 6042(a)(1).

To comply with § 6042, Maryland enacted a statute to create a P & A system. Md.Code (1974, 1995 Repl.Vol.), § 3–1001(a) of the Courts & Judicial Proceedings Article provides: "There shall be provided protection and advocacy services to persons with developmental disabilities." The governor is authorized to "make the designation of a unit as the official State agency for participation in a federal program...."

Md.Code (1984, 1993 Repl.Vol., 1994 Cum.Supp.), § 8–304 of the State Government Article. By Executive order on June 25, 1986, the governor designated MDLC as the agency responsible for the implementation of the State system for the protection and advocacy of the rights of the developmentally disabled." COMAR 01.01.1086.12.

### 1, 2, 3

In its cross-appeal, Mt. Washington challenges MDLC's authority to investigate a private hospital. We shall therefore address the cross-appeal first and consider the first three issues together.

Mt. Washington contends that the DD Act contains no mandate of authority to MDLC, that it is merely a funding statute. To support its assertion, Mt. Washington points to the Supreme Court's opinion in *Pennhurst*, wherein the Court states:

> There is virtually no support for the lower court's conclusion that Congress created rights and obligations pursuant to its power to enforce the Fourteenth Amendment. The Act nowhere states that that is its purpose. Quite the contrary, the Act's language and structure demonstrate that it is a mere federal-state funding statute. The explicit purposes of the Act are simply 'to assist' the States through the use of federal grants to improve the care and treatment of the mentally retarded. § 6000(b) (1976 ed., Supp. III). Nothing in the 'overall' or 'specific' purpose of the Act reveals an intent to require the States to fund new, substantive rights. Surely Congress would not have established such elaborate funding incentives had it simply intended to impose absolute obligations on the States.

*Pennhurst*, 451 U.S. at 18, 101 S.Ct. at 1540.

Mt. Washington insists that neither federal nor state law gives MDLC the authority it purports to assert. The Executive Order of Governor Hughes, effective June 25, 1986, promulgated as COMAR 01.01.1986.12, designates MDLC as the "official agency, for purposes of Public Law 94–103, re-

sponsible for the implementation of the State system for the protection and advocacy of the rights of the developmentally disabled." The Order also empowers MDLC to perform the duties and responsibilities to be delegated to it by the State of Maryland Plan under Public Law 94–103. As Mt. Washington points out, however, there is no Maryland Plan. The affidavit of Jack Buffington, Chief Executive Officer of the Maryland Disabilities Administration, filed on January 7, 1994, states that such a document does not exist. Mt. Washington argues that, in the absence of a plan, MDLC is an entity without governmental authority.

Upon remand of this case from the United States District Court to the Circuit Court for Baltimore City,[3] the District Court stated that MDLC "is a statewide legal services program, designated by the State of Maryland to provide protection and advocacy services to protect the rights of persons with developmental disabilities, pursuant to § 3–1001(c) of the Maryland Courts and Judicial Proceedings Article and the Developmental Disabilities Act, 42 U.S.C. §§ 6000 *et seq.*"

Judge Kaplan, in his Memorandum Opinion and Order, recognized that 42 U.S.C. §§ 6000 *et seq.*, the Developmental Disabilities Act, provides that the State (receiving funds) "must have in effect a system to protect and advocate the rights of persons with developmental disabilities." Judge Kaplan continued, the General Assembly of Maryland "has declared that '[t]here shall be provided protection and advocacy services to persons with developmental disabilities,' Md.Cts. & Jud.Proc. § 3–1001(a). Section 8–304 of the State Government Article authorizes the governor to 'make the designation of a unit as the official State Agency for participation in a federal program....'" Judge Kaplan thereupon held that MDLC is the protection and advocacy system for the State of Maryland as required by the Federal Act.

---

**3.** The instant case was initially brought by Mt. Washington in the Circuit Court for Baltimore City. MDLC subsequently removed the suit to the United States District Court, and that court, acting on the motion of Mt. Washington, remanded to the circuit court on June 21, 1993.

■ We agree with Judge Kaplan's analysis. Md.Code (1974, 1995 Repl.Vol.), § 3–1001 of the Courts and Judicial Proceedings Article provides, "There shall be provided protection and advocacy services to persons with developmental disabilities," and " 'protection and advocacy services' includes the pursuit of legal, administrative, and other appropriate remedies to protect the rights of persons with developmental disabilities." In addition, the statute states, "Protection and advocacy services shall be provided by an entity or entities, which may include private, nonprofit corporations, with the authority to pursue legal, administrative and other appropriate remedies to insure the protection of the rights of persons with developmental disabilities . . . ."

The federal Developmental Disabilities Act, 42 U.S.C. § 6000 *et seq.* requires states that receive funds pursuant to the Act, to have a protection and advocacy system to assist persons with disabilities. The General Assembly, in § 3–1001 of the Courts & Judicial Proceedings Article, has authorized the creation of an appropriate system, and the governor has by executive order designated MDLC as the protection and advocacy system for the State. While the absence of a state plan creates a void as to the precise authority of MDLC, we are convinced that MDLC has been granted authority by the State of Maryland to exercise the degree of authority that 42 U.S.C., §§ 6000 *et seq.* requires states, that are the recipient of funds to grant to their protection and advocacy systems.

Mt. Washington also contends that MDLC authority does not extend to private hospitals. We disagree. Section § 3–1001(a) of the Courts and Judicial Proceedings Article requires that protection and advocacy services shall be provided "to insure the protection of the rights of persons with developmental disabilities who are receiving treatment, services, or habilitation within this State." There is nothing in the DD Act that limits such services to persons in state hospitals. MDLC, therefore, is authorized to investigate private hospitals such as Mt. Washington.

**4**

Mt. Washington in issue four of its cross-appeal argues that the circuit court did not err in its use of State statutory definitions of abuse and neglect. We shall discuss this issue as it relates to appellant's issues.

**5**

In issue five, Mt. Washington avers that a CINA order that has no reference to Mt. Washington is not a sufficient and continuing authority to obtain confidential hospital records and reports. The circuit court ordered that "a signed and dated Child In Need of Assistance Order (CINA) appointing MDLC or any of its representatives to represent a child and inspect his or her records" is sufficient to enable MDLC to obtain the child's records from Mt. Washington. Mt. Washington argues that some CINA orders presented to Mt. Washington are old and contained no indication that the court was aware of the location of the child. Mt. Washington insists that the circuit court erred in not requiring a specific order of court in each instance.

In its opposition to Mt. Washington's argument, MDLC explains that CINA orders are intended necessarily to extend for a protracted period of time and "may continue over many years of a child's life." Because a child may be moved from one residential placement to another over the course of his or her treatment, the order must be generally worded in order to enable MDLC to obtain necessary information from whomever has control of the child. As MDLC's involvement with the child continues for as long as the child is in need of assistance, the decision of the circuit court in this regard is reasonable and necessary. We see no error.

### MDLC's Appeal

### I, II, III, & V

The first, second, third, and fifth issues raised by MDLC are sufficiently interrelated to permit us to consider them together. MDLC initially complains that the circuit

court's injunction violates the explicit statutory language of the DD Act by eliminating the P & A system's (MDLC's) authority to investigate complaints of abuse and neglect. MDLC points out that the DD Act gives the P & A system "authority to investigate incidents of abuse and neglect of persons with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred[.]" 42 U.S.C. § 6042(a)(2)(B). Of particular concern to MDLC is that the circuit court's injunction overlooks the first prong of the DD Act, which permits MDLC to conduct an investigation when it receives a report of an incident of abuse or neglect. More important, MDLC complains that the circuit court deprived MDLC of investigatory authority by requiring it to obtain prior judicial approval of any determination of probable cause.

Mt. Washington defends the action of the circuit court in this respect by suggesting that the requirement that there be an objective determination of probable cause is not precluded by federal law. Further, Mt. Washington posits that, in the past, when the State has expressly permitted MDLC to act on its subjective determination of probable cause, the State has given authority in precise terms. Citing Md.Code (1982, 1994 Repl.Vol.), § 4–307(h)(ii) and § 7–1010(b) of the Health–General Article, Mt. Washington contends that, in view of its duties with respect to safeguarding confidential records and reports, it is appropriate that MDLC be required to convince the circuit court of the existence of probable cause.

Notwithstanding the concerns of Mt. Washington, MDLC insists the DD Act permits a P & A system to conduct an investigation of complaints or reports relating to a general practice of abuse or neglect without having to undergo a contested hearing.

It appears to us that MDLC has the better of the argument. MDLC explains that it only seeks authority as a P & A to ask questions and make an inquiry. Obviously, it does not have proof of abuse or neglect at the time it seeks to undertake an

investigation; if it had proof of abuse or neglect, no further investigation would be necessary.

In *Mississippi Protection & Advocacy System v. Cotten,* 929 F.2d 1054 (5th Cir.1991), the state mental retardation center in Boswell, Mississippi imposed barriers on MP & A visitations. The center permitted visitations to patients with whom MP & A had a written retainer agreement, but, if MP & A wished to interview any other resident patients, it had to notify the legal department of the State Department of Mental Health at least 24 hours in advance of the planned visit. If the patient had a guardian, the guardian would be contacted to grant or deny permission for the interview. For patients without guardians, the patient would be asked whether a meeting was desired. Other similar restrictions were imposed. The District Court entered an injunction that: "(1) permitted MP & A access to the Center's residents with time and place restrictions tailored to minimize interference with the Center's programs; (2) relieved MP & A of the requirement of having a written retainer before interviewing a resident; (3) required the Center to provide a private meeting room for MP & A's use in advising patients of their rights; and (4) required the Center to inform the guardian of new admittees about MP & A's services." Simultaneously, MP & A was directed not to interfere with program scheduling at the Center and to honor a patient's request to terminate any meeting.

The Court of Appeals for the Fifth Circuit quoted the District Court's opinion as follows:

Defendant's view of the scope of MP & A's statutory function as simply that of attorneys available to be retained by residents if they or their guardians so desire simply does not square with the broad range of services contemplated by the [Developmental Disabilities] Act, services that include education and referral in addition to strictly legal representation. The Act not only described the range of services to be provided by the protection and advocacy systems, it also states that the systems "must have the authority" to perform these services. The state cannot

satisfy the requirements of the DDA by establishing a protection and advocacy system which has this authority in theory, but then taking action which prevents the system from exercising that authority. Defendants' restrictive practices have reduced MP & A's authority to the point that it can offer Boswell residents only a fraction of the services to which they are entitled.

With respect to the above passage, the Court of Appeals stated:

We are in full accord. The mandatory provisions of section 6042 relating to authority to investigate incidents of abuse and neglect are rendered nugatory by the Center's restrictions on MP & A. § 6042(a)(2)(B). Similarly, MP & A is prevented from performing its statutory duty of establishing a grievance procedure for clients or prospective clients. § 6042(a)(2)(D). The regulations are such that MP & A has virtually no access to clients not retained prior to the change in the regulations. Most importantly, the Center's regulations render the State's requirement to 'have in effect a system to protect and advocate the rights of persons with developmental disabilities' comatose if not moribund. § 6042(a)(2).

*Cotten,* 929 F.2d at 1059.

Mt. Washington does not dispute the holding in *Cotten,* but it contends that *Cotten* is inapplicable to a private institution that receives no federal funds pursuant to the Act. We disagree. It appears to us, for reasons already stated, that MDLC has authority to assist all developmentally disabled persons, not only developmentally disabled persons who are patients in state hospitals.

The restrictions placed upon MDLC by the circuit court are unwarranted. The initial determination of probable cause to undertake an investigation must be made by MDLC.[4] Simi-

---

4. In this connection, it should be noted that Md.Code (1982, 1994 Repl.Vol.) § 4–307(h)(ii) of the Health–General Article provides that a health care provider shall disclose a medical record without the autho-

larly, MDLC must be entrusted with the responsibility to evaluate any reports that it may receive as to neglect or abuse and determine whether such reports are a sufficient basis for further investigation. The requirement that MDLC convince the circuit court that probable cause exists prior to having access to patients, personnel, and records is burdensome and unnecessary. Mt. Washington is an institution having the care and custody of developmentally disabled persons who are entitled to the services of MDLC. Of course, there may exist a legitimate dispute as to whether MDLC's aim and goals are actually in the best interests of the developmentally disabled, but those questions must be addressed in other forums. For the purposes this opinion addresses, MDLC has been entrusted with the role of advocacy for the developmentally disabled, and in order to accomplish that mission it must be afforded sufficient means of access.

This is not to say that the concerns expressed by Mt. Washington are not substantial. Mt. Washington alleges that the real agenda of MDLC is to terminate Mt. Washington's involvement with developmentally disabled individuals and relegate such patients to residential settings. In fact, some of MDLC's activities have been pointedly aimed at curtailing Mt. Washington's ability to service patients. The relative merits of residential placements as opposed to the hospital setting provided by Mt. Washington is not for us to debate, but it is an appropriate issue for MDLC's attention. It is apparent that MDLC's efforts to prevent the expansion of Mt. Washington has thus far been without success, and it is obvious that adequate residential situations must be available before any consideration could be given to moving children out of Mt. Washington. Despite these considerations, Mt. Washington cannot interfere with MDLC's ability to carry out its responsibilities because Mt. Washington is unhappy with some of

rization of a person in interest to the State designated protection and advocacy system where the director of the system has certified in writing to the chief administrative officer of the health care provider that there is probable cause to believe that the recipient has been subject to abuse or neglect.

MDLC's long term goals, or because some of the information which MDLC may obtain in its investigation may be used for purposes adverse to Mt. Washington.

We hold that MDLC must have reasonable access to Mt. Washington's developmentally disabled patients. Mt. Washington must provide access to lawyers employed by MDLC as well as other professionals such as social workers and health care professionals. The circuit court's injunction, by requiring MDLC to obtain approval of the circuit court before investigating possible abuse or neglect, is unduly restrictive. It is incumbent upon MDLC to determine when probable cause exists to justify further investigation. In addition, MDLC must be permitted to investigate reports of abuse or neglect without prior approval of the circuit court. It is sufficient that in those instances in which MDLC has probable cause to believe that a patient has been subject to abuse or neglect that the director of MDLC certify, by affidavit setting out its basis for probable cause, to the chief administrative officer of Mt. Washington that an individual subject to MDLC's services has been the victim of abuse or neglect or that abuse and neglect of patients is resulting from a general policy of Mt. Washington.

## IV

MDLC also complains the circuit court erred in its definition of the terms "abuse" and "neglect." It argues that the circuit court erred by using definitions taken from two unrelated state statutes, Md.Code (1984, 1991 Repl.Vol.1994 Cum.Supp.), § 5–701 and § 14–101 of the Family Law Article. MDLC contends that the proper definitions are those found in the Protection and Advocacy for Mentally Ill Individuals Act of 1986 ("the PAMII Act"), 42 U.S.C. §§ 10801 *et seq.*

Mt. Washington argues that the trial court is correct, and the Maryland statutory definitions are appropriate, particularly because they are familiar to every health care facility licensed by the State. In its order, the circuit court defined "abuse" as "(1) the sustaining of any physical injury by a

patient as a result of cruel or inhumane treatment or malicious act, (2) physical injury under circumstances that indicate a patient's health or welfare is significantly harmed or at risk of being harmed, or (3) sexual abuse of a patient, whether physical injuries are sustained or not." The court defined "neglect" as "(1) the willful deprivation of a patient of adequate food, clothing, essential medical treatment or rehabilitative therapy, shelter or supervision, or (2) leaving a patient unattended, or other failure to give proper care and attention to a patient under circumstances that indicate that the patient's health or welfare is significantly harmed, or placed at risk of significant harm." The PAMII Act defines "abuse" as

any act or failure to act by an employee of a facility rendering care or treatment which was performed, or which was failed to be performed, knowingly, recklessly, or intentionally, and which caused, or may have caused, injury or death to a mentally ill individual and includes acts such as

(A) the rape or sexual assault of a mentally ill individual;

(B) the striking of a mentally ill individual;

(C) the use of excessive force when placing a mentally ill individual in bodily restraints; and

(D) the use of bodily or chemical restraints on a mentally ill individual which is not in compliance with Federal and State laws and regulations.

In addition, the PAMII Act defines "neglect" as

a negligent act or omission by any individual responsible for providing services in a facility rendering care or treatment which caused or may have caused injury or death to a mentally ill individual or which placed a mentally ill individual at risk of injury or death, and includes an act or omission such as the failure to establish or carry out an appropriate individual program plan or treatment plan for a mentally ill individual, the failure to provide adequate nutrition, clothing, or health care to a mentally ill individual, including the failure to maintain adequate numbers of appropriately trained staff.

A comparison of the two sets of definitions shows, as one would expect, that the "PAMII" definition favored by MDLC is tailored to fit the care and treatment of persons suffering from a mental illness. The selection, therefore, by Judge Kaplan of the Maryland statutory definitions appears to be more suitable for persons suffering from developmental disabilities. We do not believe that Judge Kaplan erred in this regard.

# VI

In its last issue, MDLC argues that paragraph seven of the circuit court's injunction improperly limits MDLC's access to information about non-clients to "general non-confidential" information; patient's name and room number, caregiver's name, and guardian's name. MDLC further contends that "[i]n requiring MDLC to secure a judicial probable cause determination before further questioning staff members about non-clients, the Circuit Court improperly restricted MDLC's ability to ask basic questions designed to determine whether further investigation is justified under 42 U.S.C. § 6042."

It appears that some of MDLC's concerns are addressed by our holding that the circuit court erred in requiring MDLC to secure a circuit court probable cause determination prior to initiating an investigation. The circuit court's order, in addition to permitting MDLC to secure "basic" information with respect to patients who are not clients of MDLC, also provides that MDLC may obtain "information from staff about non-clients ... according to the procedure for accessing patient records as described in Paragraphs 11 through 19." Those paragraphs of the injunction set out with particularity the means of access of MDLC to patient records. We believe that the circuit court's provisions in this regard are appropriate in the context of this controversy and, except with respect to the necessity to obtain a judicial determination of probable cause, that they are in conformity with applicable Federal and State laws.

## SUMMARY

In summary, we hold that MDLC has authority to investigate private hospitals as well as public facilities in furtherance of its protection and advocacy functions on behalf of the developmentally disabled. The circuit court did not err in its use of State statutory definitions of abuse and neglect, and the circuit court correctly set forth the requirements for a valid CINA order in relation to the acquisition of hospital records by MDLC.

The circuit court's injunction is unduly restrictive in requiring MDLC to obtain a circuit court finding of probable cause before permitting MDLC access to Mt. Washington's records and staff. In addition, MDLC's access to information with respect to non-clients includes those instances where MDLC has probable cause or reports of abuse and neglect.

JUDGMENT REVERSED IN PART, AS SET FORTH HEREIN, OTHERWISE AFFIRMED.

CASE REMANDED FOR ENTRY OF MODIFIED ORDER IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.