**Schuenemann v. Dreemz, LLC**

*Martin G. Rubenstein* and *Erick R. Chizmas,* for plaintiff.

*John R. Evans, William D. Patorick* and *John M. Clark,* for defendants.

MESSIAH-JACKSON, *J.,* January 28, 2011—

## I. INTRODUCTION and PROCEDURAL HISTORY

On May 14, 2010, following a week long trial, the jury concluded that Dreemz, LLC, a club in Philadelphia did serve alcohol to 23-year-old Brynne Schuenemann while she was visibly intoxicated in violation of Pennsylvania's Dram Shop Act, 47 Pa. C.S. §4-493(1).

The plaintiff-estate of Brynne Schuenemann alleged

that on Saturday night, November 4, 2006, when Ms. Schuenemann and her friends were at Dreemz, the defendant's bartenders and servers continued to furnish multiple alcoholic drinks to Ms. Schuenemann while she was increasingly and visibly intoxicated.

In the early hours of November 5, 2006, Ms. Schuenemann drove her automobile at a high rate of speed on Columbus Boulevard in South Philadelphia, and she struck a pole. Ms. Schuenemann was alive when the first responder arrived at the scene, however, she died within five to 15 minutes thereafter. The four other occupants of her motor vehicle were transported to hospitals for treatment of serious injuries.

The defense vigorously contested the claim that it caused any harm to Ms. Schuenemann. Defendant-Dreemz' consistent position during the pre-trial and trial proceedings was that there was insufficient evidence that plaintiff-decedent was served alcohol while visibly intoxicated. The defense "theme" was that Brynne Schuenemann was a drunk driver who should have taken a taxi cab home that evening. May 14, 2010, N.T. 53, 64-67. The jury was asked to consider her comparative negligence pursuant to 75 Pa. C.S. §3802.

During the trial the jury heard from 14 witnesses addressing issues of liability and damages. On May 14, 2010, the jury returned a verdict in favor of the Estate of Brynne Schuenemann as follows: survival action, $1,485,199.00 and wrongful death action, $479,559.00. The total award for compensatory damages was $1,964,758.00. The jury also determined that the plaintiff-decedent was 49 percent comparatively negligent.

Next, following a hearing on plaintiff's claim for punitive damages, the jury concluded that the conduct of Dreemz, LLC was malicious, wanton, willful or oppressive, or showed reckless indifference to the interests of others. The jury awarded $0 for this claim.

After trial transcripts were received, a post-trial briefing schedule was set by counsel and the court. Oral argument was heard on November 10, 2010.

Defendant-Dreemz seeks a new trial because it disagrees with certain trial court rulings. The plaintiff-estate filed a motion for delay damages. For the reasons which follow, the post-trial motions filed by Dreemz, LLC are denied. The unopposed motion for delay damages filed by the Estate of Brynne Schuenemann is granted.

## II. LEGAL DISCUSSION

A.  *The Jury's Decision is Fully and Fairly Supported By The Evidence*

The Pennsylvania Dram Shop Act states in pertinent part at 47 Pa. C.S. §4-493(1):

It shall be unlawful --

(1)  FURNISHING LIQUOR OR MALT OR BREWED BEVERAGES TO CERTAIN PERSONS.

For any licensee or the board, or any employe, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any minor: Provided

further, that notwithstanding any other provision of law, no cause of action will exist against a licensee or the board or any employe, servant or agent of such licensee or the board for selling, furnishing or giving any liquor or malt or brewed beverages or permitting any liquor or malt or brewed beverages to be sold, furnished or given to any insane person, any habitual drunkard or person of known intemperate habits unless the person sold, furnished or given alcohol is visibly intoxicated or is a minor.

Section 4-493(1) applies to licensee liability for injuries to patrons such as Brynne Schuenemann.

The defendant argues that this statute acts as a "shield" of immunity for clubs such as Dreemz, unless customers exhibit signs of visible intoxication at the time they are served. Defendant's post-trial memorandum, pages 12-13. The jury considered all of the circumstances of this case and chose to believe the uncontradicted testimony of eyewitness accounts of the events of November 4 and 5, 2006. The shield of immunity was pierced.

In order to sustain its burden of proof, plaintiff-estate had to prove not only that Ms. Schuenemann was served alcohol while she was visibly intoxicated, but also that the intoxication was the proximate cause of her harm, e.g. *Holpp v. Fez*, 665 A.2d 147 (Pa. Super. 1995); *Reilly v. Tiergarten, Inc.*, 633 A.2d 208 (Pa. Super. 1993). It is well-settled in Pennsylvania that the bartender or server must not provide more alcohol to a patron when the signs of intoxication are visible. Civil liability is based on "... appearances rather than medical diagnosis." *Johnson v. Harris*, 615 A.2d 771, 776 (Pa. Super. 1992). See also,

*Hiles v. Brandywine Club,* 662 A.2d 16 (Pa. Super. 1995), without evidence of visible intoxication the bar is not civilly liable pursuant to Section 4-493(1).

*1. Brynne Schuenemann Was Served Alcohol By Dreemz While She Was Visibly Intoxicated.*

The testimony and evidence from Jasmine Childs and Justin Witt was undisputed. Dreemz personnel would have observed that Brynne was repeatedly and frequently going to the main bar located at the front of the club. May 11, 2010, N.T. 121-124. She ordered and paid for drinks for herself and her friends. The Dreemz staff would have noticed that Ms. Schuenemann was stumbling, had slurred speech and was loud, as she continued to purchase more drinks. May 11, 2010, N.T. 129-130. The bartenders and servers would have seen that Ms. Schuenemann did not order any food and that she was stumbling and bumping into people as she returned again and again to the main bar that evening. May 11, 2010, N.T. 155-157.

If the staff had been monitoring the customers they would have been aware of the commotion when Ms. Schuenemann found a patron's gold necklace, and then after receiving a reward, she announced, "All drinks are on me." May 11, 2010, N.T. 125. As the evening progressed, Ms. Schuenemann was observed with glassy eyes and almost falling into the bar, ". . . barely getting there." Her voice got louder and her manner and behavior became sloppy and sluggish as she continued to purchase alcoholic beverages. May 10, 2010, N.T. 158-160

In addition to direct evidence of visible intoxication while in the club, there was substantial circumstantial evi-

dence that Ms. Schuenemann was served alcohol at a time she was visibly intoxicated. Here, as in *Fandozzi v. Kelly Hotel,* 711 A.2d 524, 527 (Pa. Super. 1998), Ms. Schuenemann drank alcohol at Dreemz for approximately four hours before she left at the 2:00 a.m. closing time. Her friends saw her in an intoxicated condition immediately after she left Dreemz, while walking to the elevator and going to her car. She was argumentative, stumbling, loud and her speech was slurred. Several witnesses testified that Ms. Schuenemann was driving erratically. One hour later at the time of death, Brynne Schuenemann's blood alcohol concentration (BAC) was .224. The plaintiff's expert offered his opinion that such a great amount of alcohol would have caused Ms. Schuenemann to show visible signs and symptoms of intoxication, "ataxic." See also, *Couts v. Ghion,* 421 A.2d 1184 (Pa. Super. 1980)(plurality opinion).

The defense by Dreemz was two-fold. First, the defendant insisted that the evidence of visible intoxication was insufficient to go to a jury. See defendants post-trial memorandum, pages 7-8. Second, Dreemz' position was that it did have training, as well as policies and procedures in place, to appropriately manage intoxicated patrons. Thus, if a patron such as Brynne Schuenemann was visibly intoxicated, Dreemz personnel knew how to handle the situation. The evidence did not support either defense.

The testimony of Marc Stein, owner and manager of Dreemz, was that there was an employee policy and procedures manual given to Dreemz bartenders (May 11, 2010, N.T. 75); that he reviewed his expectations with newly hired security personnel (N.T. 90-91); that visibly

intoxicated patrons are "flagged" by the bartenders, then asked to leave by security if they are unruly. Patrons were permitted to remain at Dreemz if they are not unruly (N.T. 92-94); Mr. Stein stated that if the patron was not unruly but intoxicated, Dreemz policy was to give them a bottle of water to "hydrate their body" and "dilute what they drank" ( N.T. 94-96).

This testimony from Marc Stein was given at his deposition in December, 2009. When confronted with this pre-trial evidence, coupled with the inability of the defendant to provide the employee manual, payroll records, personnel records or other business records for the October - November 2006 time frame, plaintiff-estate presented evidence that none of the Dreemz employees had the requisite professional training or licensed certifications to recognize or treat signs and symptoms of visible intoxication. See also May 13, 2010 N.T. 150-153. Ms. Jamie Bodoff, a Dreemz bartender, confirmed that certifications were not required when personnel were hired at Dreemz.

A jury is free to believe all or part or none of the testimony. The record supports this jury's decision to reject both defenses put forth by Dreemz, LLC. The plaintiff-estate did prove the statutory violation of the Dram Shop Act, §4-493(1) by direct and circumstantial evidence.

2. *The Violation of the Dram Shop Statute Proximately Caused Brynne Schuenemann's Injuries.*

Our Pennsylvania Supreme Court has recognized, that "causation is as much a part of negligence actions based upon statutory violations as it is of purely common law actions." *Majors v. Brodhead Hotel,* 416 Pa. 265, 271, 205 A.2d 873, 877 (Pa. 1965), and numerous cased cited

therein. See also, *Mathews v. Konieczny*, 515 Pa. 106, 113, 527 A.2d 508, 512 (Pa. 1987); *Reilly v. Tiergarten, Inc.*, 633 A.2d 208 (Pa. Super. 1993). In a case such as this, in order for Dreemz to be found civilly liable, the jury must conclude that the wrongful conduct was a substantial factor in bringing about the plaintiff's injuries, even though it need not be the only factor.

The trial record reveals that the plaintiff-estate offered ample evidence that the violation of the statute, Section 4-493(1), was the proximate cause of Brynne Schuenemann's accident and death. Jasmine Childs explained to the jury that while Ms. Schuenemann was driving, she was swerving and taking her eyes off the road. She drove "like someone...intoxicated" . . . "driving . . . crazy. . . recklessly." May 11, 2010, N.T. 132-133. Another passenger, Justin Witt, testified that the driver was "yelling, screaming"..."speeding in the car . . . going back and forth . . . slamming the brakes at stop lights." May 11, 2010, N.T. 162.

Ms. Jamie Kammerer Tum had not remained with the group at Dreemz, but re-joined her friends for a ride home on November 5, 2006. Ms. Tum noticed the difference in Brynne Schuenemann's behavior as soon as she got into the car. Ms. Schuenemann was "worked up," "speech was slurred...very aggressive . . . screaming." May 12, 2010, N.T. 208-219. Ms. Childs was "scared" and put her seatbelt on moments before the car crashed into the pole. May 11, 2010, N.T. 134.

The plaintiff-estate presented an expert witness, Dr. John DiGregorio, who provided his opinion that the level of alcohol consumed by Ms. Schuenemann, prevented her

from driving safely and was the primary contributing factor to cause her death. May 13, 2010, N.T. 39-40. Dr. DiGregorio, with an M.D. in internal medicine and a Ph.D. in pharmacology and toxicology, explained to the jury that a .224 BAC causes individuals to suffer from ataxia. May 13, 2010, N.T. 46-50. He explained the physical and mental signs and symptoms of ataxia: dizziness, impaired speech, impaired mental and motor skills, impaired perception, lack of depth recognition, inability to drive, loss of critical judgment.

Dr. DiGregorio stated that the descriptions of Ms. Schuenemann's behavior on November 4-5, 2006 were consistent with the range of signs and symptoms of the effects of ataxia. Ms. Schuenemann's behavior was described as loud and obnoxious, leaning against the bar, unsteady. May 13, 2010, N.T. 53-66, 69. Moreover, as she drank eight or nine beers, her ability to make critical judgments and decisions decreased. She was unable to determine "within herself" whether or not she could safely drive an automobile. May 13, 2010, N.T. 61-67.

As a medical doctor, this witness also explained to the jury about the physical pain suffered by the driver while she was alive after the accident. Dr. DiGregorio referred to the description provided by Police Officer Sean Collins at May 12, 2010, N.T. 41-46, when he rendered his opinion. May 13, 2010, N.T. 68.

The jury heard vigorous cross-examination by the defense challenging the facts and data upon which Dr. DiGregorio based his opinion. May 13, 2010, N.T. 70-110. They had the opportunity to consider that the expert failed to include in his report certain "variables": metabolism,

absorption, postmortem drug redistribution and tolerance. See also, May 14, 2010, N.T. 60-64.

The jury's decision that the statutory violations caused the injuries and death of Ms. Schuenemann is supported by the evidence.

3. *The Record Demonstrates the Profound Emotional and Psychological Loss Suffered by the Parents Caused by the Negligence of Dreemz.*

In *Rettger v. UPMC Shadyside,* 991 A.2d 915 (Pa. Super. 2010), the Superior Court clarified Pennsylvania's Wrongful Death Act, 42 Pa. C.S. §8301(b), and Pennsylvania Suggested Standard Jury Instructions 6.19(A)(4), and reiterated long standing Pennsylvania case law. That court held that damages in a wrongful death claim include the loss of the decedent's life and loss to her family. The parents may recover for the value of the decedent's services, which include loss of companionship, comfort, society, guidance, solace and protection.

Here, as in the *Rettger* case, this defendant sought to limit and diminish the value of "services" of Brynne Schuenemann to her job history and future career plans. May 10, 2010, N.T. 44-45. The jury heard that although her parents were divorced, the decedent maintained almost daily contact with each parent. She drove to Harrisburg every weekend and went to mass with her mother on Saturdays and then again with her father on Sunday mornings. Ms. Schuenemann assisted each of her parents with household projects and with shopping.

She motivated and encouraged each parent through rehabilitation and recovery following surgeries.

This trial jury heard from Raymond F. Schucnemann, Brynne's father on May 13, 2010, N.T. 129-130:

> I love her very much and miss her. You know, losing somebody like that is, you never get over it. It's a constant depression. You have to wake up every day and just do your business to remember all the positive thinking, Deepak Chopra and all the books I used to give her all the time about positive thinking and now I am getting a taste of that myself back again from her.

Kathryn Schuenemann, Brynne's mother, also described her loss, on May 13, 2010, N.T. 141-142:

> She motivated me physically and emotionally because I had the back surgeries and it was really getting me down. She motivated me to attempt to go for my master's in social work at Temple because she was at Temple. So I applied at Temple, Strawberry Square, got accepted in social work because we had plans to do things together, those outreach programs and stuff. And then when she died, I just — I am just not going.

The record is clear that in this case, as in *Rettger*, supra, 991 A.2d at 933, the jury recognized the "depth of the anguish suffered" by the decedent's parents. Here also, the award, while substantial, could not compensate them for the loss of their daughter. This is not a case of "loss of consortium," as mislabeled by the defendant in all pre-trial and post-trial memoranda and hearings. These damages are controlled by statute and not the common law — the loss of society and comfort.

Although the Superior Court opinion in the *Rettger* case was rendered two months prior to the trial in this case,

and itself relied on long-standing statutory and case law, Dreemz failed to specifically challenge the wrongful death damages in any pre-trial or post-trial motion. Accordingly, this claim is waived. See Rule 227.1; *Weir v. Estate of Ciao*, 521 Pa. 491, 503, 556 A.2d 819, 825 (Pa. 1989), holding that when the issue relied on in a post-trial brief was "left unstated" in the post-trial motions themselves, it was waived; *Carnicelli v. Bartram*, 433 A.2d 878, 881 (Pa. Super. 1981), for an issue to be properly before the court, it must have been "specifically assigned" in post-verdict motions; citing *Tagnani v. Lew*, 493 Pa. 371, 426 A.2d 595 (Pa. 1981).

B.  *Dreemz has Failed to Present Sufficient Grounds for a New Trial*

Dreemz argues that it is entitled to a new trial. When considering a motion for a new trial, the Superior Court stated in *Gunn v. Grossman*, M.D., 748 A.2d 135, 139 (Pa. Super. 2000):

> A trial court's decision regarding grant or refusal of a new trial will not be reversed on appeal absent an abuse of discretion or an error of law that controlled the outcome of the case. *Spino v. John S. Tilley Ladder Co.*, 548 Pa 286, 696, A.2d 1169 (1997). In making this determination, we must consider viewing the evidence in the light most favorable to the verdict winner, whether a new trial would produce a different verdict. *Robertson v. Atlantic Richfield Petroleum Products Co.*, 537 A.2d 814 (Pa. Super. 1987). Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed. *Johnson v. Hyundai Motor America*, 698 A.2d 631 (Pa. Su-

per. 1997)

A trial judge's ability to upset a jury's verdict is "very narrowly circumscribed." *Criswell v. King*, 575 Pa. 34, 46, 834 A.2d 505, 512 (Pa. 2003). See also, *Armbruster v. Horowitz*, 572 Pa. 1, 11, 813 A.2d 698, 703 (Pa. 2002), credibility is solely for the jury and a new trial permitted only when the verdict shocks one's sense of justice; *Martin v. Evans*, 551 Pa. 496, 711 A.2d 458 (Pa. 1988), the jury may believe all, part or none of the witnesses' testimony, *Morrison v. Commonwealth of Pennsylvania*, 538 Pa. 122, 133, 646 A.2d 565, 571 (Pa. 1994), the trial court must first determine whether mistakes were made during the trial; *Johnson v. Hyundai Motors*, 698 A.2d 631, 635 (Pa. Super. 1997), a new trial is warranted when there is a palpable abuse of discretion or an error of law which controls the outcome of the case. After considering the circumstances here, a new trial is not appropriate in this case.

Defendant-Dreemz seeks a new trial because it asserts that evidence of negligence was impermissibly presented by the plaintiff-estate. See defendant's post-trial memorandum, pages 12-14. This contention is meritless.

The failures to secure patron identification, the evidence of conditional licensing, absence of certification, and the presence and/or absence of Dreemz personnel policies were appropriate rebuttal to the Dreemz defense that its personnel were trained. Moreover, the absence of certification and policies were proper evidence to establish causation.

Most significantly, once the threshold set forth in Section 4-493(1) was met by the overwhelming, uncontro-

verted evidence that plaintiff-decedent was visibly intoxicated, then the negligence cause of action for civil liability was in place. See *Rivero v. Timblin*, 2010 WL2914400, 12 Pa. D & C 5th 233, Lancaster County, March 10, 2010, citing *Hiles v. Brandywine Club*, 664 A.2d 16 (Pa. Super. 1995), for the proposition that visible intoxication is the "prerequisite" to establish liability for negligence.

The plaintiff-estate has not alleged that the defendant had a duty to warn its patrons of the effects of intoxication or a duty to prevent intoxicated patrons from driving. Compare, *Demmings v. Brown & Lynch American Legion*, Court of Common Pleas of Northhampton County, Civil Action No. C0048CV2003001498 (2003). Nor has this plaintiff alleged that Dreemz had a duty to not condone excessive drinking. Compare, *Meyers v. Red Lion Cafe, Inc.*, Court of Common Pleas of Schuylkill County, Civil Action No. S-632-2004. The cases relied on by Dreemz in its reply to plaintiff's supplemental reply in opposition to defendant Dreemz, LLC's amended post-trial motions are not persuasive.

The defendant also seeks a new trial because reference was made to .08, the legal limit of BAC by the expert witness and by counsel. May 10, 2010, N.T. 8-14.

In the case at bar, with ample direct and circumstantial evidence that the patron was served alcohol while visibly intoxicated, there was no effort by plaintiff-estate to rely solely on the .08 legal driving limit to meet its burden of proof. Pennsylvania appellate law permits evidence of the BAC combined with other evidence of visible intoxication to be considered by the triers of fact. See *Locke v. Claypool*, 627 A.2d 801 (Pa. Super. 1993), citing *Billows*

*v. Farmers Trust Company*, 438 Pa. 514, 266 A.2d 92 (Pa. 1970) holding that when the only evidence relating to intoxication is the BAC, and no evidence describing physical conduct, erratic operation of bicycle, slurred speech or poor appearance, the record was insufficient to prove intoxication. In *Ackerman v. Delcomico*, 486 A.2d 410 (Pa. Super. 1984), the Superior Court commented about Dram Shop Act cases at 414, "we have permitted evidence of blood alcohol content in civil cases where visible intoxication...is sought to be proved." The Superior Court there held that BAC was properly admitted because it is relevant circumstantial evidence of intoxication so long as other evidence of the patron's conduct is presented.

Pennsylvania appellate courts have concluded that expert witnesses may testify about the legal limits of the BAC when evidence of other conduct is also presented. See, *Fandozzi v. Kelly Hotel*, 711 A.2d 524 (Pa. Super. 1998), expert testimony of BAC combined with circumstantial evidence of conduct can satisfy proof of Dram Shop liability; *Conner v. Duffy*, 652 A.2d 372 (Pa. Super. 1994), summary judgment was affirmed where expert testimony was sole evidence of possible intoxication; *Johnson v. Harris*, 615 A.2d 771 (Pa. Super. 1992), without evidence of visible intoxication expert's affidavit not permitted; *Ackerman v. Delcomico*, supra, evidence of BAC is proper when admitted with explanatory expert testimony in a civil case.

The cases relied on by Dreemz are distinguishable. *Suskey v. Loyal order of Moose Lodge #86*, 472 A.2d 663 (Pa. Super. 1984), holds that neither a breathalyzer test result nor the motor vehicle code's presumption of intoxication may be substituted for a burden of proof in a Dram Shop

Act, §4-493(1). In *Billows v. Farmer's Trust Co.*, supra, the BAC was not admissible as evidence of unfitness to drive in a motor vehicle matter.

Dreemz claims there was insufficient evidence for the jury to find that its actions were malicious or wanton or willful or oppressive or showed reckless indifference to the interest of others. This court concludes that the evidence does support the determination of "reckless indifference." The defendant, however, has not explained how it was prejudiced under the circumstances present here. See generally, May 14, 2010, N.T. 123-141; post-trial hearing, held November 10, 2010.

C. *The Jury's Decision of Comparative Negligence is Fully and Fairly Supported by the Evidence*

The record reveals that Ms. Jamie Kammerer Tum told the jury that when she got into the car with her friends, she was surprised. May 12, 2010, N.T. 215:

> ...at that time I just remember her [Brynne] getting really worked up...but at that time I was just kind of like, oh my God. What is going on? And I was kind of like getting scared in the car and I think at that time I realized that, you know, that they were all pretty drunk.

The witness stated that Ms. Schuenemann, the driver, was yelling on the cell phone, handing it to Jasmine in the back seat, and screaming while the car was jerking. May 12, 2010, N.T. 217-221. Jasmine Childs and Justin Witt also provided testimony about the cell phone, erratic driving and drunken driving. May 11, 2010, N.T. 133, 162. Dr. DiGregorio explained the effects of alcohol on the driver's judgment. May 13, 2010.

With this in mind the jury's determination that Brynne Schuenemann was driving while distracted and that she was 49 percent causally liable for her own injuries and death is supported by the record. The verdict award totaling $1,964,758 for survival action and wrongful death action is molded to $1,002,026.51.

D. *The Plaintiff's Unopposed Motion for Delay Damages is Granted (Control No. 10052918)*

Delay damages in the amount of $17,886.18 are to be added to the molded verdict. Judgment will be entered in favor of plaintiff-estate and against Dreemz, LLC in the amount of $1,019,912.69.

### III. CONCLUSION

For all of the reasons set forth above, the amended motion for post-trial relief filed by Dreemz, LLC is denied, and the unopposed motion for delay damages filed by the Estate of Brynne Schuenemann is granted.

On November 4 and 5, 2006, Dreemz, LLC, a club in Philadelphia, served 23-year-old college student Brynne Shuenemann multiple alcoholic beverages while she was visibly intoxicated and in violation of Pennsylvania's Dram Shop Act, 47 Pa. C.S. §4-493(1). In the early morning hours of November 5, 2006, Ms. Schuenemann died when she drove her car at a high rate of speed into a pole.

On May 14, 2010, following a week-long trial, during which 14 witnesses testified, the jury returned a verdict in favor of the Estate of Brynne Schuenemann in the amount of $1,964,758.00. The jury also determined that the plaintiff-decedent was 49 percent comparatively negligent.

Post-trial memoranda were filed and oral argument heard on November 10, 2010. On December 6, 2010, this court filed an order denying the defendant-Dreemz motion for a new trial. See court Exhibit "A," attached hereto. The defendant filed a timely notice of appeal.

In accordance with Rule 1925(a) of the Pennsylvania rules of appellate procedure, this court respectfully submits to the Superior Court, the memorandum in support of order denying defendant Dreemz, LLC's motion for a new trial and granting plaintiff's motion for delay damages, dated December 6, 2010, attached hereto as court Exhibit "B," as the reasons for the ruling and order.

## JUDGMENT ORDER

And now, December 6, 2010, after considering the amended motion of defendant Dreemz, LLC for post-trial relief, and the responses thereto filed by the plaintiff, and after reviewing all of the supplemental memoranda filed by all parties, and oral argument held November 10, 2010, and, after considering the unopposed motion for delay damages and molding of verdict filed by the plaintiff, and, for the reasons set forth in the court's memorandum filed this date, it is hereby ordered that the defendant's amended motion is denied and the plaintiff's motion is granted.

Judgment is entered in favor of Raymond F. Schuenemann, III, administrator of the Estate of Brynne A. Schuenemann, deceased in the amount of one million nineteen thousand nine hundred twelve dollars and sixty-nine cents ($1,019,912.69) and against Dreemz, LLC.