**Anna FANDOZZI, Administratrix of the Estate of Anthony Shish, deceased, and Alexander Shish, Administrator of the Estate of Anthony Shish, deceased, Appellants,**

**v.**

**KELLY HOTEL, INC., Frank Gregg and Valerie L. Pack, Appellees.**

Superior Court of Pennsylvania.

Argued March 4, 1998.

Filed April 29, 1998.

Reargument Denied June 30, 1998.

Jan C. Swensen, Pittsburgh, for appellants.

Thomas M. Lent, Erie, for appellees.

Before JOHNSON and HUDOCK, JJ., and CERCONE, President Judge Emeritus.

HUDOCK, Judge:

This is an appeal from the order granting summary judgment in favor of Kelly Hotel, Inc. (Appellee) and against Anna Fandozzi and Alexander Shish (collectively, Appellants), respectively the administratrix and administrator of the estate of Anthony Shish, on the issue of liability under the Dram Shop Act, 47 P.S. section 4–493. For the reasons that follow, we reverse.

■ Summary judgment is governed by Pennsylvania Rule of Civil Procedure 1035.2, which provides:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2, 42 Pa.C.S.A. When presented with a challenge to an order granting summary judgment, we consider the record in the light most favorable to the non-moving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 258 (Pa.Super.1997). Our scope of review is plenary. *Id.*

■ The Pennsylvania Dram Shop Act provides, in pertinent part, that it shall be unlawful:

> (1) For any licensee or the board, or any employe, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated. . . .

47 P.S. § 4–493(1). A violation of this statute is deemed negligence per se, and the defendant will be held liable if the violation is the proximate cause of the injuries. *Johnson v. Harris*, 419 Pa.Super. 541, 548–50, 615 A.2d 771, 775 (1992). Thus, in order for Appellants to recover, they must prove two things: (1) that an employee or agent of Appellee served the decedent alcoholic bever-

ages at a time when he was visibly intoxicated; and (2) that this violation of the statute proximately caused his injuries and ultimate death. *See Id.*

Viewing the record in the light most favorable to Appellants reveals the following facts: On September 4, 1994, Anthony Shish walked from his hunting camp to the Kelly Hotel, a distance of about a mile. Before arriving at the Kelly Hotel at approximately 9:00 p.m. or 9:15 p.m., he had not drunk any alcohol. The record is unclear with respect to how long Shish was in the bar, and how many drinks he was served while he was there. Mary Kradel, a bartender that evening, recalled seeing Shish that evening because he made a complaint when she asked him to pay a cover charge. She recalled serving him an alcoholic beverage, or perhaps two, prior to asking him to remit payment for the cover charge. She also recalled serving him another alcoholic beverage after that. Kradel had no recollection of what Shish was drinking or the total number of drinks he had consumed.

Shish left the bar at some time between 10:00 p.m. and 11:00 p.m. Three individuals observed Shish either on the porch in front of the Kelly Hotel or on the adjacent road. Frank Gregg, co-owner of the Kelly Hotel, testified via deposition that he was working the door when Shish exited the bar. Gregg stated that after he bid Shish good-bye, Shish walked across the road, and "the next thing I know, he was down in the middle of the street." Gregg Deposition at 34. After Gregg helped him up, he noticed that Shish was staggering and his speech was slurred. Gregg testified that prior to falling, Shish exhibited no signs of intoxication. Gregg helped Shish back to the porch and told him to rest for a few minutes. Shish slept on the porch until approximately 11:30 p.m., when he got up and again tried to walk, and again fell in the middle of the street.

Appellants note that Gregg's deposition testimony is different from the statement he gave to police. Gregg's statement to police was, in pertinent part, as follows:

The next time I saw [Shish] was 10:00 p.m. He slept on the front porch. I watched

him every 10 minutes. [He] sat there for awhile and then about 11:30 p.m. he wanted to leave.... He seemed worst [sic] when he wanted to leave. I wouldn't let him go.

Police Report at 14.

Valerie Pack testified that when she exited the bar some time after 9:30 p.m. to get some fresh air, she observed Shish. She stated that Shish appeared to be highly intoxicated, and that he was staggering and fell in the middle of the street. Although Pack specifically denied seeing Shish exit the bar in her deposition testimony, she stated to police that "[t]he man came out of the bar and staggered into the road," and then "fell very hard in the middle of the road on his left side." Police Report at 15. Pack then assisted Gregg in helping Shish return to the porch. She noted that his speech was slurred.

Pack subsequently agreed to drive Shish home in a friend's car. She was accompanied by Michael Rossey, a teen-age boy who also witnessed Shish sitting on the porch, saw him stagger and fall in the street, and observed that Shish smelled of alcohol and had slurred speech. The pair were able to understand Shish to say that he lived about a mile away. After Shish could not identify exactly where he lived, they left him at the entrance to a campground about a mile from the Kelly Hotel.

At approximately 3:30 a.m. on September 5, 1994, state troopers found Shish lying on the side of the road near where Pack and Rossey had left him. The troopers observed that Shish had a head injury, there was blood on his clothing, and he exhibited "a high degree of intoxication." Police Report at 2. Shish was taken to Clarion Hospital where a blood sample was taken at 4:54 a.m., which revealed a blood alcohol content of 0.214 percent. Shish subsequently died from the injury to his head.[1]

Appellants offered the expert report of toxicologist Charles L. Winek, Ph.D., who calculated Shish's blood alcohol content at 0.30 percent at the time he left the Kelly

---

1. The police determined that Shish sustained the injury by falling and striking his head on the gravel berm of the road near where he was found.

Hotel. The report discussed the effects of this percentage of alcohol on an individual and concluded that Shish would have been displaying visible signs of intoxication while in the Kelly Hotel. Based upon Shish's weight, the report stated that he would have had to consume the equivalent of over fourteen twelve-ounce beers to attain such a blood alcohol content.

■ Appellants argue that the foregoing creates a material issue of fact with respect to whether Shish was served alcohol at the Kelly Hotel while visibly intoxicated and, therefore, that the trial court erred in granting summary judgment. It is not sufficient for a plaintiff to establish merely that alcoholic beverages were served to a patron or that the patron was intoxicated at the time he or she was injured or caused injury to another. *Holpp v. Fez, Inc.*, 440 Pa.Super. 512, 515–17, 656 A.2d 147, 149 (1995). For civil liability to attach, evidence must be produced indicating that the patron was served alcohol at a time when he or she was visibly intoxicated. *Id.*; 47 P.S. § 4–493(1). As the facts illustrated above indicate, Appellants have offered no direct evidence that Shish was served alcohol at a time when he was visibly intoxicated. Nevertheless, we believe Appellants have produced sufficient circumstantial evidence to create a jury question on this issue.

■ This Court has previously considered whether an action under 47 P.S. section 4–493(1) requires direct eyewitness evidence that an individual was served alcohol while visibly intoxicated. In *Couts v. Ghion*, 281 Pa.Super. 135, 421 A.2d 1184 (1980), a plurality of a panel of this Court determined that compulsory nonsuit was improperly entered where the plaintiff had adduced sufficient

circumstantial evidence for the jury to reasonably infer that a patron had been served alcohol while visibly intoxicated.[2] We recognize, of course, that a plurality opinion of this Court has no precedential value.[3] *See, e.g., Commonwealth v. Hurst*, 367 Pa.Super. 214, 220–22, 532 A.2d 865, 869 (1987). We note, however, that in the eighteen years since *Couts* was decided, neither this Court nor our Supreme Court has held that direct evidence is required to prove that a patron was served alcohol while visibly intoxicated. Subsequent decisions of this Court have addressed *Couts*, noting that it is not binding, but nevertheless examining whether similar circumstantial evidence had been presented. *See Conner v. Duffy*, 438 Pa.Super. 277, 652 A.2d 372 (1994) (distinguishing *Couts* on its facts); *Johnson v. Harris*, 419 Pa.Super. 541, 615 A.2d 771 (1992) (same); *McDonald v. Marriott Corp.*, 388 Pa.Super. 121, 564 A.2d 1296 (1989) (same). Further, in *Peluso v. Walter*, 334 Pa.Super. 609, 483 A.2d 905 (1984), this Court vacated a grant of summary judgment where the plaintiff had presented circumstantial evidence that a patron was served alcohol while visibly intoxicated, and the only evidence that he was not visibly intoxicated was the bar owner's testimonial affidavit. Accordingly, we conclude that a plaintiff can prove dram shop liability in the absence of direct eyewitness evidence that an individual was served alcohol at a time when he or she was visibly intoxicated.

Based on this conclusion, we now examine Appellants' circumstantial evidence. Shish drank alcohol in the Kelly Hotel for approximately two hours.[4] Three individuals observed Shish in an extremely intoxicated condition, either on the porch of the Kelly Hotel or on the adjacent road, immediately after he

---

**2.** The three-judge panel consisted of one judge writing the plurality, one judge dissenting, and one judge concurring in the result.

**3.** We note, however, that *Couts* was cited as authority in *Speicher v. Reda*, 290 Pa.Super. 168, 172, 434 A.2d 183, 185 (1981), in which a panel of this Court relied on *Couts* as "very much in point," without recognition of its plurality status.

**4.** As noted by the trial court, alcohol takes effect on an individual only after it has been absorbed into the bloodstream, which generally takes be-

tween 30 to 90 minutes. *See Commonwealth v. Speights*, 353 Pa.Super. 258, 263–65, 509 A.2d 1263, 1266 (1986). However, the trial court failed to view the evidence in the light most favorable to Appellants and consider the possibility that Shish could have become intoxicated after drinking in the Kelly Hotel for only 30 minutes. Viewed in this manner, as is required when considering a motion for summary judgment, the evidence indicates that Shish was inside the Kelly Hotel long enough to exhibit visible signs of intoxication.

left the bar. He was stumbling and falling to the ground, his speech was slurred, and he smelled of alcohol. In fact, he was impaired to such a degree that he could not identify the location of his camp. Two of the individuals then deposited Shish at the entrance to a campground where he was subsequently discovered by police, who also observed his intoxicated condition.

A blood test administered approximately six hours after Shish left the Kelly Hotel indicated a blood alcohol content of 0.214 percent. Dr. Winek determined that, at the time he left the Kelly Hotel, Shish's blood alcohol content would have been 0.30 percent. Dr. Winek further stated that Shish must have consumed the equivalent of over fourteen twelve-ounce beers during the time he was inside the Kelly Hotel. The evidence indicates that Shish drank no alcohol prior to his arrival at the Kelly Hotel, and there has been no suggestion that he drank, or was able to drink, more alcohol after leaving. Moreover, Dr. Winek offered his opinion that because Shish would have had such a large amount of alcohol in his system, he undoubtedly would have displayed visible signs of intoxication.

■ We recognize that section 4–493(1) prohibits the furnishing of alcohol to a patron who is *visibly* intoxicated, and as such, mandates that tavern owners be governed by physical appearances rather than medical diagnoses. *Hiles v. Brandywine Club,* 443 Pa.Super. 462, 467–69, 662 A.2d 16, 19 (1995). Moreover, this Court has refused to find the existence of a material issue of fact with respect to visible intoxication solely on the basis of expert "relation back" testimony. *See Johnson, supra* (finding no material fact existed where sole evidence of visible intoxication was speculative expert report, which was contradicted by deposition testimony of plaintiff and patron); *see also Conner, supra.* Instantly, however, Dr. Winek's conclusions are supported by additional circumstantial evidence indicating that Shish may have been visibly intoxicated while in the Kelly Hotel.

It is important to note that Shish was found by the state troopers in the same area in which Pack and Rossey left him. Combined with the testimony of Shish's behavior immediately upon leaving the bar, the inference exists that Shish drank no alcohol after leaving the Kelly Hotel. As noted previously, it is undisputed that he had no alcohol to drink prior to arriving at the Kelly Hotel. Therefore, Dr. Winek's report serves to explain how Shish could have consumed enough alcohol at the Kelly Hotel to register a blood alcohol content of 0.214 percent approximately six hours later. Dr. Winek's report further illustrates that Shish's blood alcohol content would have been even higher at the Kelly Hotel. Any dispute with respect to Dr. Winek's method of calculation, or conclusions from those calculations, would go to the weight to be accorded his testimony.

It is true that this Court has been "wary of an attempt to create genuine issue of material fact as to 'visible intoxication' based on medical testimony of what the *average person's* reaction might have been *assuming [the patron's] 'probable' blood alcohol concentration.*" *Johnson,* 615 A.2d at 776 (footnote omitted). As noted above, however, the sole evidence of visible intoxication offered in *Johnson* was the expert report, which itself was contradicted by the plaintiff's deposition testimony. Moreover, we view Dr. Winek's report as offering two distinct opinions: one with respect to Shish's blood alcohol content at the time he left the Kelly Hotel, and one with respect to signs of visible intoxication Shish would have been exhibiting inside the bar.

Consistent with our reasoning in *Johnson,* we do not view Dr. Winek's opinion that, based upon averages, Shish would have been exhibiting visible signs of intoxication, as itself creating a material issue of fact. Dr. Winek's conclusions as to Shish's blood alcohol content upon leaving the Kelly Hotel, and the number of drinks Shish must have consumed to reach that level, are supported by the record and based upon accepted science.[5] If Shish consumed the alcohol equivalent of

---

5. Expert relation back testimony is often used in the context of criminal prosecutions for driving under the influence in violation of 75 Pa.C.S.A. section 3731(a)(4) (driving vehicle while blood alcohol content 0.10 percent or greater). Although our Supreme Court has discussed the complex nature of such testimony on several occasions, *see, e.g., Commonwealth v. Gonzalez,*

fourteen drinks and had a blood alcohol content of 0.30 percent, he would have been highly intoxicated. Under such circumstances, a jury could reasonably infer that Shish was exhibiting visible signs of intoxication inside the Kelly Hotel, even in the absence of Dr. Winek's opinion of how Shish would have behaved.

Moreover, we believe that the circumstantial evidence presented by Appellants is more compelling than "the strong circumstantial evidence of visible intoxication in *Couts.*" *Johnson,* 419 Pa.Super. at 554, 615 A.2d at 777. The evidence in *Couts* established that a patron had consumed eight or nine drinks in a three-hour period before being served his last drink; that he had driven erratically and caused an accident after leaving the drinking establishment; that he had appeared intoxicated to a police officer approximately one hour after leaving the establishment; and that his blood alcohol content was tested at 0.12 percent three hours after the accident.

Instantly, Appellants have presented evidence that Shish drank more than the equivalent of fourteen twelve-ounce beers during the two hours he was in the Kelly Hotel; that immediately after he left, he was stumbling and falling to the ground, and could not identify where he lived; that he was still highly intoxicated when found by police more than four hours later; and that his blood alcohol content was 0.214 percent approximately six hours after leaving the Kelly Hotel. Accordingly, Appellants have presented circumstantial evidence sufficient to create a jury question with respect to whether Shish was served alcohol in the Kelly Hotel at a time when he was visibly intoxicated. Thus, the trial court improperly granted summary judgment.

Order reversed; matter remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

519 Pa. 116, 546 A.2d 26 (1988); *Commonwealth v. Jarman,* 529 Pa. 92, 601 A.2d 1229 (1992), such testimony is nonetheless admissible when offered by a properly qualified expert. Moreover, the Court's concerns are mitigated where, as here, the testimony has not been offered to prove a precise blood alcohol content at a particular time beyond a reasonable doubt.