**Jenkins v. Krivosh**

C.P. of Lawrence County, No. 11212 of 2012

*Phillip L. Clark*, for plaintiffs.
*Phillip J. Sbrolla*, for defendant.

COX, *J.*, July 16, 2014—Before the court for disposition is the motion for summary judgment filed on behalf of the defendant Heron's Landing, LLC, t/d/b/a Olde Stonewall Golf Club (hereinafter "Heron's Landing"). which argues that the plaintiffs have failed to present evidence to create a question of fact that employees of Heron's Landing served alcohol to defendant John Krivosh when he was visibly intoxicated. Heron's Landing also contends that the plaintiffs should not be provided with additional time to procure a toxicology expert as that, by itself, is not sufficient evidence to permit the plaintiffs' claim to survive summary judgment.

On December 31, 2011, defendant John Krivosh left his residence at approximately 8:00 a.m. and traveled with friends to search for campsites in Tidioute, Pennsylvania. They stopped for lunch at approximately 12:00 noon to eat lunch and defendant Krivosh drank one beer. He eventually returned home at approximately 4:00 p.m. defendant Krivosh then made arrangements to meet defendant Mary Frances Venn at Shakespeare's Restaurant & Pub (hereinafter "Shakespeare's Restaurant"), which is owned by Heron's Landing, for drinks. Prior to going to the restaurant, defendant Krivosh drank two "gulps" of vodka directly from the bottle, which he estimated was

approximately eight ounces. He then placed the vodka bottle in his vehicle as he intended on consuming more of it later to celebrate New Year's Eve. Defendant Venn arrived at Shakespeare's Restaurant first between 6:00 and 6:30 p.m. She ordered a vodka tonic with a twist of lime. Shortly thereafter, defendant Krivosh arrived and ordered himself and defendant Venn a vodka tonic. They were seated at the bar among 10 to 15 other patrons and began conversing when defendant Krivosh informed defendant Venn that he was terminating their relationship. Defendant Krivosh consumed his drink and ordered another vodka tonic. He drank half of the second vodka tonic before departing the restaurant. Defendant Krivosh left the restaurant first and was followed by defendant Venn. Both individuals drove separately in their own vehicles,[1] but defendant Venn followed defendant Krivosh as, according to her deposition testimony, she did not know the route to return home. They eventually arrived at a traffic light. Once the light changed to green, defendant Krivosh sped away and defendant Venn temporarily lost sight of his vehicle. As defendant Krivosh was driving outside of defendant Venn's view, defendant Krivosh attempted to navigate a curve in the road, he crossed into the other lane of the roadway and struck a vehicle operated by plaintiff Elvin W. Jenkins, who was severely injured. Defendant Venn approached the site of the accident and she parked her vehicle behind defendant Krivosh's truck. After the collision, defendant Krivosh exited his vehicle and approached the plaintiffs' vehicle where he noticed that the driver, Mr. Jenkins, was trapped. Defendant Krivosh then returned to his vehicle and disposed of the vodka bottle by throwing it over the hillside. Michael Paul Allen

---

1. It must be noted that the vehicle being driven by defendant Krivosh was registered in defendant Venn's name.

observed defendant Krivosh throw the vodka bottle over the hill and stated in his affidavit that defendant Krivosh could not walk straight. He also explained that defendant Krivosh had to hold onto his truck to stand up, his speech was slurred, his eyes were bloodshot and glassy, and he was obviously intoxicated.

Patrolman Jon W. Disher of the Ellwood City Police Department testified in his deposition that he responded to a communication informing him of an automobile accident and he arrived on the scene of the accident at 7:42 p.m. Upon arrival, officer Disher observed defendant Krivosh leaning on his vehicle in an attempt to balance himself. The officer approached defendant Krivosh and he observed that defendant Krivosh had glassy, bloodshot eyes, he was swaying in a circular motion and he emanated an odor of alcohol. Officer Disher began speaking with defendant Krivosh, who was attempting to keep his mouth closed in an effort to hide the odor of alcohol. The officer questioned defendant Krivosh concerning the bottle of vodka that he threw over the hillside, which defendant Krivosh denied. However, officer Matthew Liberatore, also from the Ellwood City Police Department, recovered a vodka bottle after the hillside was illuminated by the local fire department. Defendant Krivosh insisted that he did not drink from the bottle and only drank at Shakespeare's Restaurant. At that time, officer Disher administered field sobriety tests to defendant Krivosh. The first field sobriety test administered was the horizontal gaze nystagmus, which consists of the police officer holding a pen in front of the potentially intoxicated person and moving it to the right and left side. Upon performing this test, defendant Krivosh's eyes did not track the pen and jumped from one position to the other, which indicated that he had a blood alcohol content over .10 percent. Next, officer Disher

administered the walk and turn test, in which defendant Krivosh was instructed to walk nine steps forward with his heel placed just in front of the toes of his opposite foot, turn around and then walk nine more steps in that manner. Defendant Krivosh failed on the first nine steps and had one misstep on the second nine steps. According to the police report, officer Disher also administered a portable breath test, which indicated that defendant Krivosh's blood alcohol content was .09 percent. Officer Disher then placed defendant Krivosh under arrest and transported him to Ellwood City Hospital to undergo a blood test to determine his blood alcohol content. Officer Disher testified that, upon first approaching defendant Krivosh, it was apparent to any reasonable person that he was intoxicated.

On October 16, 2012, the plaintiffs filed suit seeking damages against defendant Krivosh, defendant Venn and Heron's Landing. The claims against Heron's Landing are based upon alleged violations of the Dram Shop Act. On November 20, 2012, defendants Krivosh and Venn filed preliminary objections to complaint, which were overruled in part and sustained in part by opinion and order of court issued by the Honorable Eugene E. Fike, senior judge, dated May 7, 2013. In the interim, Heron's Landing filed its answer, new matter and crossclaims on February 28, 2013. The plaintiffs then filed an amended complaint on May 14, 2013, to which Heron's Landing filed an answer, new matter and crossclaim to the plaintiffs' amended complaint on June 18, 2013. Eventually, Heron's Landing filed the current motion for summary judgment on January 17, 2014, which argues that the plaintiffs have failed to present evidence to create a question of fact that employees of Heron's Landing served alcohol to defendant Krivosh when he was visibly intoxicated

and the plaintiffs should not be provided with additional time to procure a toxicology expert as that, by itself, is not sufficient evidence to permit the plaintiffs' claim to survive summary judgment. The plaintiffs have filed the expert report of Karl E. Williams, MD, MPH, on May 15, 2014, with their brief in answer to defendant's motion for summary judgment. Therefore, the court no longer has to address that issue as the plaintiffs do not need further time to procure an expert report.

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after the relevant discovery has been completed. *Miller v. Sacred Heart Hospital*, 753 A.2d 829 (Pa. Super. 2000). The mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial. The summary judgment rule exists to dispense with a trial of the case or, in some matters, issues in a case, where a party lacks the beginnings of evidence to establish or contest a material issue. *Ertel v. Patriot-News Company*, 544 Pa. 93, 674 A.2d 1038 (1996), *reargument denied*, (1996), *certiorari denied*, 519 U.S. 1008 (1996).

Any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report or if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. No. 1035.2. Summary judgment may be granted only in cases where it is clear

and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. *Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59, 61 (Pa. Super. 2000) (citing *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 650-651 (Pa. Super. 1999). If the non-moving party does not respond, the trial court may grant summary judgment on that basis. Pa.R.C.P. No. 1035.2(d); *see also Harber Philadelphia Center City Office Limited v. LPCI, L.T.D.*, 764 A.2d 1100 (Pa. Super. 2000).

When determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hughes v. Seven Springs Farm, Inc.*, 563 Pa. 501, 752 A.2d 339 (2000). In passing on a motion for summary judgment, the court must examine the record in a light most favorable to the non-movant and resolve any doubt in his favor. *Swartley v. Hoffner*, 734 A.2d 915 (Pa. Super. 1999). Summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Comm'n*, 555 Pa. 149, 153, 723 A.2d 174, 175 (1999).

Only when the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment. *Basile v. H&R Block, supra*. Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a

prima facie cause of action or defense. *Rauch v. Mike-Mayer*, 783 A.2d 815 (Pa. Super. 2001). It is not the function of the court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission*, 143 Pa. Cmwlth. 494, 579 A.2d 1358 (1990).

The plaintiffs' claims against Heron's landing are based upon 47 P.S. §4-493(1), which states:

It shall be unlawful —

(1) Furnishing liquor or malt or brewed beverages to certain persons. For any licensee or the board, or any employe[e], servant or agent of such licensee or of the board, or any other person, to sell furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person *visibly intoxicated*, or to any minor...(emphasis added).

In an action based upon a violation of the Dram Shop Act, the plaintiff is required to establish the following: "(1) that an employee or agent of [the defendant] served the [plaintiff] alcoholic beverages at a time when he [or she] was visibly intoxicated; and (2) that this violation of the statute proximately caused his [or her] injuries." *Fandozzi v. Kelly Hotel, Inc.*, 711 A.2d 524, 525, 526 (Pa. Super. 1998) (citing *Johnson v. Harris*, 419 Pa. Super. 541, 548-550, 615 A.2d 771, 775 (1992)). A plaintiff can establish that an establishment served alcohol to a visibly intoxicated patron through circumstantial evidence in the absence of direct eyewitness evidence. *Id.*, 711 A.2d at 526. A licensee will not be held liable based upon any consideration, such as blood alcohol content, that is not externally apparent as the law focuses on visible signs of

404

intoxication. *Laukemann v. Com., Pennsylvania Liquor Control Bd.*, 82 Pa. Cmwlth. 502, 506, 475 A.2d 955, 956-957 (1984). "The practical effect of the law is to insist that the licensee be governed by appearances, rather than by medical diagnosis." *Id.*

The plaintiffs cite to *Fandozzi* for the proposition that visible intoxication can be proven in the absence of direct eye witness testimony. In *Fandozzi*, the decedent walked a distance of one mile from his hunting camp to the Kelly Hotel where the decedent began consuming alcoholic beverages. A bartender recalled serving him two alcoholic drinks prior to asking for him to pay a cover charge and another drink after speaking with him. The bartender did not recall what the decedent was drinking or the total number of drinks he consumed. The decedent then exited the Kelly Hotel where he was observed by three individuals either on the porch in front of the Kelly Hotel or on the adjacent road. One of those individuals was the co-owner of the Kelly Hotel, who was working the door. He said goodbye to the decedent and watched him walk across the street where he fell to the ground. The co-owner attempted to help him up and noticed that the decedent was staggering and his speech was slurred; however, the co-owner did not notice those signs of intoxication prior to the fall. The co-owner then helped the decedent back to the front porch where the decedent slept for a while. He then attempted to walk, but fell again in the middle of the street. Another individual testified that she observed the decedent when he was leaving the Kelly Hotel at some time after 9:30 p.m. He seemed to be very intoxicated and was staggering before he fell in the middle of the street. She offered to drive the decedent home in a friend's vehicle. A teen-age boy, who was accompanying that individual, also observed the decedent stagger and fall in

the street. He stated that the decedent smelled of alcohol and had slurred speech. The individual and the teenage-age boy were unable to understand the decedent when he explained where he lived due to his slurred speech and he smelled of alcohol. The decedent was unable to identify exactly where he lived, so they left him at the entrance to a campground about a mile away from the Kelly Hotel. Early the next morning, state troopers found the decedent lying on the side of the road near the entrance of the campground. The troopers noticed that he had a head injury, was bleeding and demonstrated a high degree of intoxication. He was taken to the hospital where a blood test revealed that he had a blood alcohol content of 0.214 percent. The decedent died from the injury to his head. The appellants filed suit against the Kelly Hotel among other defendants. The trial court granted summary judgment in favor of the Kelly Hotel on the issue of liability under the Dram Shop Act. It must be noted that the appellants offered an expert report stating that the decedent's blood alcohol content at the time he left the hotel would have been .30 percent and he would have displayed visible signs of intoxication while in the Kelly Hotel.

The *Fandozzi* Court initially stated that it is not enough to serve a patron alcoholic beverages, for civil liability to attach, there must be evidence that the patron was served alcohol when he or she was visibly intoxicated. *Fandozzi*, 711 A.2d at 527 (citing *Holpp v. Fez, Inc.*, 440 Pa. Super. 512, 515-517, 656 A.2d 147, 149 (1995)). The court also noted that the appellants have failed to produce any direct evidence that the decedent was visibly intoxicated at the time he was served alcohol, but there was sufficient circumstantial evidence to create a jury question on that issue. *Id.* The *Fandozzi* Court reasoned that the appellants presented circumstantial evidence that

the decedent was visibly intoxicated, which included the decedent drank alcohol for two hours at the hotel, he was observed by three witnesses in an extremely intoxicated condition, either on the porch of the Kelly Hotel or in close proximity to the adjacent street, he was stumbling, he fell, had slurred speech, smelled of alcohol and he could not identify the location of his hunting camp. *Id.* In addition, a blood alcohol test taken approximately six hours after the decedent left the hotel indicated that he had a blood alcohol content of 0.214 percent. The appellants also provided an expert report that stated the decedent's blood alcohol content would have been .30 percent when he was at the hotel and he would have demonstrated signs of visible intoxication. The court explained that the medical testimony alone is insufficient to create an issue of material fact concerning visible intoxication. *Id.*, 711 A.2d at 528 (citing *Johnson v. Harris*, 419 Pa. Super. 541, 615 A.2d 771, 776 (1992)). The expert report in *Fandozzi* was supported by the circumstantial evidence creating an issue of material fact, but the medical testimony by itself did not. *Id.* The court reasoned, "Appellants have presented evidence that [decedent] drank more than the equivalent of fourteen twelve-ounce beers during the two hours he was at the Kelly Hotel; that immediately after he left, he was stumbling and falling to the ground, and could not identify where he lived; that he was still highly intoxicated when found by police more than four hours later; and that his blood alcohol content was 0.214 percent approximately six hours after leaving the Kelly Hotel." *Id.*, 711 A.2d at 529. Therefore, the *Fandozzi* Court determined that the trial court improperly granted summary judgment in favor of Kelly Hotel as there was an issue of material fact concerning whether the decedent was visibly intoxicated at that time he was served alcohol at the hotel. *Id.*, 711 A.2d at 529.

The plaintiffs also cite to *Couts v. Ghion*, 281 Pa. Super. 135,421 A.2d 1184 (1980), which is a plurality decision of the Pennsylvania Superior Court.[2] In that case, Dean P. Ghion (hereinafter "Ghion") attended a business meeting hosted by a soft drink distributor, Refreshment Products, Inc., at a restaurant and motel operated by Holiday House, Inc. The attendees of the meeting, including Ghion, were furnished with alcohol. Ghion consumed eight alcoholic beverages at the meeting and ate lunch after the meeting concluded. At 5:00 p.m., Ghion went to a bar located elsewhere in the Holiday House restaurant where he drank two more alcoholic beverages. He finished the drinks at 5:15 p.m. and left the Holiday House, Inc. in his automobile. Ghion was then involved in an accident at 6:00 p.m. as he was driving on Route 30 North and his vehicle crossed the double yellow line. He was traveling in the westbound lanes when he struck a Toyota pickup. The driver of that vehicle died as a result of the collision. Within minutes, a police officer arrived to investigate the scene. He observed Ghion walking with a staggering gait and he detected a strong odor of alcohol. Ghion also fumbled through his wallet and dropped some cards when he was asked to provide his driver's license and registration. Additionally, Ghion's speech was slurred. The appellant not only filed suit against Ghion, but against Refreshment Products, Inc. and Holiday House, Inc. for serving Ghion alcohol when he was visibly intoxicated. The trial court granted summary judgment on behalf of Refreshment Products, Inc. and a compulsory nonsuit in favor of Holiday House, Inc. As a result, the appellant appealed to the Superior Court of Pennsylvania arguing that the trial court erred

---

2. The Pennsylvania Supreme Court has stated that plurality opinions do not have precedential value. *Commonwealth v. Baldwin*, 604 Pa. 34, 42, 985 A.2d 830, 835 (2009) (citing *Kelley v. State Employees' Ret. Bd.*, 593 Pa. 487,932 A.2d 61,67-68 (2007)).

in entering judgment as there were issues of material fact concerning whether Ghion was visibly intoxicated when those parties served him alcohol.

The court initially stated that Refreshment Products, Inc. could not be held liable under the Dram Shop Act as the courts have refused to impose liability upon persons who are not licensed and engaged in the sale of intoxicants. *Id.*, 281 Pa. Super. at 140, 421 A.2d 1187 (citing *Manning v. Andy*, 454 Pa. 237, 310 A.2d 75 (1973)). The *Couts* Court then focused its attention on Holiday House, Inc. The court determined that the evidence presented was sufficient for that issue to be submitted to a jury. *Id.*, 281 Pa. Super. at 142, 421 A.2d 1188. The appellants' evidence included testimony concerning Ghion's substantial alcohol consumption, his erratic driving, failing to utilize the lights on his vehicle, the appearance of intoxication noted by the police officer and improperly excluded evidence of his blood alcohol content. The court stated, "Despite the lack of direct evidence bearing on Ghion's condition when he served his last drink, we think that the jury could have reasonably concluded that he was visibly intoxicated at that time." *Id.* Therefore, the *Couts* Court affirmed the trial court's decision to enter summary judgment in favor of Refreshment Products, Inc. and reversed the trial court's entry of a compulsory nonsuit concerning Holiday House, Inc. *Id.*

Heron's Landing argues that this case more similarly resembles *Johnson*, 419 Pa. Super. 541, 615 A.2d 771. In that case, the appellants were involved in a one-vehicle automobile accident after frequenting several local drinking establishments with friends. The appellants argued that the drinking establishments violated the Dram Shop Act by serving the driver alcohol when she was visibly intoxicated. The driver picked up her passenger at

approximately noon at his mother's residence where he resided. They went to the Chestnut Street Inn where they had three 12-ounce beers. At 1:00 p.m., the appellants walked to nearby Sunbury Eagles where they consumed several 16-ounce beers. They then watched a movie before driving to the Milton Eagles, which they soon left because it was crowded. Apparently, they went to the Milton American Legion where the passenger drank beer and gambled. The driver vaguely remembers consuming beer there as well. The appellants also stopped at the Halfway House; however, the appellants were not served alcohol there. They used the bathroom and left that establishment. Soon thereafter, the appellants were involved in a one-vehicle accident. The appellants filed suit seeking damages against the drinking establishments that they visited for violations of the Dram Shop Act.

The appellees filed motions for summary judgment arguing that there was no evidence that the appellants were served alcohol while they were visibly intoxicated. The trial court granted those motions and noted that the only evidence that the appellants were visibly intoxicated came from the appellants' expert report stating that the driver's blood alcohol content would have been higher than .226 percent when she left the Halfway House and it would have been .07 percent when she began drinking at the Sunbury Eagles. According to that report, the driver's blood alcohol content would have exceeded .10 percent during the time when she was drinking at the Sunbury Eagles and would have exceeded .15 percent by the time they left that establishment. The expert also opined that a person with those blood alcohol contents would have shown visible signs of intoxication, including a decreased capacity for hearing resulting in speaking louder, decreased dexterity, diminished motor skills, compromised reaction

time, slurred speech and sometimes bloodshot eyes. The trial court reasoned that the expert report was based upon the effects of alcohol on the average person and not personal observations of the appellants on the day in question. The appellants filed an appeal to the Superior Court of Pennsylvania asserting that there is a genuine issue of fact as to the driver being served while she was visibly intoxicated as she was served alcoholic beverages at all of the establishments and the expert report outlines the typical signs of intoxication the average person would have displayed given the driver's estimated blood alcohol content.

The *Johnson* Court agreed with the trial court's ruling and explained that when examining whether a person is visibly intoxicated, the courts should place emphasis on what can be seen and not focus as much on blood alcohol content. *Id.*, 419 Pa. Super. at 551, 615 A.2d at 776 (quoting *Laukemann v. Com., Pennsylvania Liquor Control Bd.*, 82 Pa. Cmwlth. 502, 506, 475 A.2d 955, 956-957 (1984)). The court explained, "A review of the Record displays that there is nothing to indicate that [the driver] was·served while visibly intoxicated at any of the drinking establishments. Quite the contrary is true. [The passenger] asserted in his deposition testimony that [the driver] was not visibly intoxicated the day of the accident." *Id.* Moreover, the court determined that the expert testimony did not create a question of fact as it is merely an attempt to relate back the blood alcohol content when the appellants were at certain establishments before the accident and it indicates the visible signs of intoxication that the average person would demonstrate. *Id.*, 419 Pa. Super. at 552, 615 A.2d at 776. However, there is no indication that the driver's reaction to alcohol ingestion would be the same as the average person's response. *Id.* Thus, the appellants

have failed to produce any witness to support their position, the trial court properly granted summary judgment. *Id.*

The Superior Court of Pennsylvania addressed a similar case to the current matter in *Conner v. Duffy*, 438 Pa. Super. 277, 652 A.2d 372 (1994). In that case, the driver collided with the appellant while driving home from a Philadelphia Phillies baseball game hosted at Veteran's Stadium in Philadelphia, Pennsylvania. The driver was arrested and charged with driving under the influence. The appellant filed suit asserting claims of negligence against the concessionaire at the Stadium and the Philadelphia Phillies for serving the driver while he was visibly intoxicated. The concessionaire and the Philadelphia Phillies moved for summary judgment, which was granted by the trial court. The appellant filed an appeal to the Superior Court of Pennsylvania. The appellant offered the deposition testimony of one of the driver's friends who attended the baseball game. He stated that beer purchases were made at the stadium and the driver drove erratically when exiting the stadium. The arresting police officer also testified that the driver appeared to be intoxicated approximately one hour after the baseball game concluded. He exhibited slurred speech and blood shot eyes. The appellant contended that the results of the field sobriety tests, blood alcohol tests and "relation back" testimony by the appellant's expert demonstrated that the driver would have appeared intoxicated during the time he was at the stadium.

The *Conner* Court emphasized that the driver's friend testified that the driver did not appear to be intoxicated at the stadium and his erratic driving was attributed to his unfamiliarity of the roadways as he missed the turn to enter Interstate 95. *Id.*, 438 Pa. Super. at 282, 652 A.2d at 374. The friend also stated that he was not concerned about the

driver's ability to operate the vehicle. *Id.* In addition, the friend could not testify to ever seeing the driver purchase beer from the concession stand or the usherette. *Id.,* 438 Pa. Super. at 282, 652 A.2d at 375. In fact, the friend stated that the five of them who went to the game together, alternately purchased beer based upon who wanted a beer at that particular time. *Id.* The court explained there was no nexus between the beer purchases and the driver's visible intoxication as the only certain testimony provided by the friend was that the driver did not appear to be intoxicated. *Id.* As a result, the appellant's only proof of visible intoxication was the driver's appearance at the time of his arrest and the relation back testimony by the appellant's expert. *Id.,* 438 Pa. Super. at 283, 652 A.2d at 374. The appellant contended that the evidence presented was sufficient to demonstrate that the driver was visibly intoxicated when he was served alcoholic beverages pursuant to the court's decision in *Couts.* The *Conner* Court initially noted that *Couts* is a plurality opinion and is not binding on the court's decision. *Id.* The court also distinguished *Couts* from *Conner* as there was a lack of erratic driving, the difference in time that elapsed between the blood alcohol testing and the accident and there was testimony from the friend that the driver consumed more beer in the vehicle after leaving the stadium. *Id.* Thus, the *Conner* Court affirmed the trial court's decision to grant summary judgment in favor of the appellees. *Id.*

In the case *sub judice,* defendant Krivosh made arrangements to meet Mary Frances Venn at Shakespeare's Restaurant for drinks. Prior to leaving to travel to the restaurant, defendant Krivosh drank two "gulps" of vodka for a total consumption of approximately eight ounces. He placed the bottle of vodka in his vehicle and then departed for Shakespeare's Restaurant. Defendant Venn arrived

at the restaurant first and was later joined by defendant Krivosh, who ordered a vodka and tonic for both of them. They began conversing and defendant Krivosh informed defendant Venn that he was terminating their relationship. Defendant Krivosh consumed that beverage and ordered another one. He drank half of that beverage and paid for the drinks with a $20 bill prior to leaving the restaurant. Defendant Venn left shortly thereafter and followed him into the parking lot. Defendant Krivosh and defendant Venn entered their vehicles and defendant Krivosh drove off followed by defendant Venn. After traveling a short distance[3], they arrived at a traffic light and defendant Krivosh sped away when the light turned green. Defendant Venn lost sight of his vehicle at that time. As defendant Krivosh was driving outside of defendant Venn's view, he crossed into the other lane of the roadway and struck the plaintiffs' vehicle, which caused Elvin W. Jenkins to suffer severe injuries. The distance from the traffic light to the site of the accident was approximately a quarter of a mile. Defendant Venn approached the site of the accident and she parked her vehicle behind defendant Krivosh's truck. Defendant Krivosh exited his vehicle and approached the other vehicle where he realized that Mr. Jenkins was trapped inside. Defendant Krivosh returned to his vehicle and attempted to dispose of the vodka bottle over a nearby hillside. Patrolman Disher then arrived at that scene and observed that defendant Krivosh had glassy, bloodshot eyes, he was swaying in a circular motion and he emanated an odor of alcohol. Defendant Krivosh was attempting to keep his mouth closed in an effort to hide the odor of alcohol. Officer Disher then administered three field sobriety tests, which defendant Krivosh failed. One

---

3. Officer Disher testified that the drive from Shakespeare's Restaurant to the site of the accident would last approximately ten minutes depending on the traffic lights.

of the field sobriety tests was a portable breath test, which indicated that defendant Krivosh's blood alcohol content was .09 percent. The plaintiffs provided an expert report from Karl E. Williams, MD, MPH, who utilized methods of relation back extrapolation to determine that defendant Krivosh would have had a blood alcohol content of 0.172 percent when he was at Shakespeare's Restaurant or the equivalent of eight or nine alcoholic beverages. He opined that is a level of intoxication at which any casual observer would notice that defendant Krivosh was visibly intoxicated.

This case is similar to *Conner* as there is no direct testimony that defendant Krivosh was visibly intoxicated while being served alcoholic beverages at Shakespeare's Restaurant. Defendant Venn testified in her deposition that defendant Krivosh did not appear to be intoxicated while at the restaurant. The two were able to engage in an in depth conversation with no signs of intoxication. Moreover, the plaintiffs did not provide any testimony from any restaurant employees or other patrons of Shakespeare's Restaurant that defendant Krivosh appeared to be visibly intoxicated, such as having difficulty walking, slurring his words or having a significant number of drinks. Defendant Krivosh and defendant Venn testified that he had only one and a half vodka tonics at the restaurant before paying the bill and departing, which is substantiated by his testimony that he paid with $20. Only two drinks were served to the defendant at Shakespeare's Restaurant and there is no evidence that he was visibly intoxicated while served or at anytime inside Shakespeare's Restaurant. In addition, there is no evidence of erratic driving during the ten-minute drive prior to defendant Krivosh's failure to navigate the bend causing the collision with the plaintiff's vehicle. The record is also devoid of any reference that

defendant Krivosh was unable to control his vehicle other than his testimony that it seemed like his truck steering was not responding when he attempted to navigate the curve in the road. The plaintiffs rely entirely upon the testimony of officer Disher and the affidavit of Michael Paul Allen, who both observed defendant Krivosh after the accident. They both stated that defendant Krivosh appeared to be intoxicated. They both asserted that defendant Krivosh was visibly intoxicated when they observed him. It is important to note that when defendant Krivosh was observed by Mr. Allen he had just been in a high speed collision with another vehicle, yet he still had the wherewithal to throw the vodka bottle, which was half empty, over the hill. The plaintiffs have provided the expert report of Dr. Williams to demonstrate that defendant Krivosh's blood alcohol content would have been 0.172 percent when he was at Shakespeare's Restaurant and it would have been apparent to a casual observer that he was visibly intoxicated. According to *Conner*, that "relation back" testimony is insufficient to create a question of fact to permit the issue of visible intoxication to be decided by a jury. The court will also note that the terminology utilized by 47 P.S. § 4-493(1) indicates that an establishment may not serve alcohol to any patron that is *visibly intoxicated at the time the alcoholic beverage is served*. (emphasis added). In this case, there is no evidence or testimony that defendant Krivosh appeared visibly intoxicated while he was at Shakespeare's Restaurant. In fact, defendant Venn testified to the opposite that defendant Krivosh did not appear to be intoxicated and she could not smell alcohol on his breath. The plaintiffs have not presented any evidence demonstrating that defendant Krivosh was slurring his words at Shakespeare's Restaurant, he was unable to walk properly or he was driving erratically prior to the accident. To uphold plaintiff's theory would unnecessarily

impose liability upon any establishment serving alcoholic beverages when there has been testimony by a police officer that a driver is under the influence despite a complete void of direct evidence that the driver was intoxicated when he was served alcohol at the establishment. Therefore, the court finds that the plaintiffs have failed to present evidence creating a material fact regarding whether defendant Krivosh was visibly intoxicated when he was served alcohol at Shakespeare's Restaurant.

For the reasons set forth in this opinion, defendant Heron's Landing's motion for summary judgment is granted.

## ORDER OF COURT

Now this 16th day of July, 2014, this case being before the court on May 27, 2014, for oral argument on the motion for summary judgment filed by the defendant Heron's Landing, LLC t/d/b/a Olde Stonewall Golf Club, with both parties appearing through counsel, the plaintiffs Elvin W. Jenkins, II and Mary Anna Jenkins, represented through counsel, Phillip L. Clark, Jr., Esquire and the defendant Heron's Landing, LLC t/d/b/a Olde Stonewall Golf Club, represented through counsel, Phillip J. Sbrolla, Esquire and after a consideration of the arguments and briefs presented and submitted by counsel and a complete and thorough review of the applicable record, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

1. In accordance with the attached opinion, the motion for summary judgment filed by the defendant Heron's Landing, LLC t/d/b/a Olde Stonewall Golf Club is hereby granted.

2. Count VI (sic) of the amended complaint *Elvin W.*

*Jenkins, II vs. Heron's Landing, LLC t/d/b/a Olde Stonewall Golf Club* and count VI of the amended complaint *Mary Anna Jenkins vs. Heron's Landing, LLC t/d/b/a Olde Stonewall Golf Club* are hereby dismissed with prejudice.

3. The prothonotary is directed to serve a copy of this order of court upon counsel of record.

