J-A25011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NICHOLAS MULLINS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SANDS BETHLEHEM GAMING, LLC D/B/A SANDS CASINO RESORT BETHLEHEM | |
| Appellee | No. 1075 EDA 2017 |

Appeal from the Order Entered March 20, 2017
In the Court of Common Pleas of Northampton County
Civil Division at No.: c48cv2014-000242

BEFORE: OTT, STABILE, JJ, and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 12, 2018**

Appellant/plaintiff Nicholas Mullins ("Mullins") appeals from the March 20, 2017 judgment entered in the Court of Common Pleas of Northampton County ("trial court"), following the grant of Appellee/defendant Sands Bethlehem Gaming, LLC d/b/a Sands Casino Resort Bethlehem's ("Sands") motion for compulsory nonsuit in this civil action.[1] Upon review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant attempts to appeal from the March 10, 2017 order denying his post-trial motion to remove nonsuit. It is settled that in a case where nonsuit is entered, the appeal properly lies from the judgment entered after the denial of a motion to remove nonsuit. **See Billig v. Skvarla**, 853 A.2d 1042, 1048 (Pa. Super. 2004) ("[I]n a case where nonsuit was entered, the appeal properly lies from the judgment entered after denial of a motion to remove nonsuit."). Accordingly, the appeal here lies from the judgment entered on March 20, 2017.

The facts and procedural history of this case are undisputed. On or about January 22, 2012, Mullins and his then-fiancée, Caitlin Shields ("Shields"), visited the Sands Casino in Bethlehem, Pennsylvania, where both were served alcoholic beverages. Three hours after receiving their last alcoholic beverage, an altercation occurred between Mullins and Shields in their hotel room. As a result of the altercation, Shields suffered serious head trauma and Mullins was injured in the groin and face. Mullins, thereafter, was arrested and charged with various crimes, including attempted homicide. Mullins ultimately pleaded guilty to aggravated assault, for which he served four years in a state correctional institute.

On January 13, 2014, Mullins initiated the instant action by filing a complaint against Sands, asserting violations of the Dram Shop Act ("Act"), 47 P.S. § 4-493. Mullins asserted that Sands served him and Shields alcoholic beverages while they were visibly intoxicated. Mullins claimed relief for two types of damages. First, he alleged that Shields inflicted physical injuries upon him during the altercation. Second, he alleged that he suffered damages as result of his incarceration. Specifically, Mullins claimed that his incarceration caused him to suffer mental anguish, loss of reputation, and loss of past and future earnings.

The case proceeded to trial, at which Sands moved for compulsory nonsuit following Mullins' case in chief. The trial court granted nonsuit. Mullins filed post-trial motions, seeking to remove nonsuit. On March 10, 2017, the trial court denied Mullins' post-trial motions. On March 20, 2017, Mullins filed

a praecipe for entry of judgment and timely appealed to this Court. The trial court directed Mullins to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Mullins complied. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Mullins presents the following issues for review, reproduced here verbatim:

> 1. Whether the Court appropriately entered nonsuit against plaintiff due to its conclusion that plaintiff's "criminal actions . . . were so remote and extraordinary the defendant cannot be held" legally?
>
> 2. Whether the Court, in so doing, erroneously focused on the "criminal actions" of plaintiff in its analysis, rather the arguably "reasonably foreseeable" mutual fight by the two drunk casino patrons in the hotel room they had rented?
>
> 2. Whether the nonsuit against plaintiff must be overturned:
>
> a. Due the trial court's misunderstanding and misstatement of the law concerning the foreseeability of and responsibility for resulting "criminal actions" under our Dram Shop Act, as well as the viability of "first-party" actions under that Act?, and/or
>
> b. Due to the Court's appearance of "bias and prejudice" against plaintiff's case?

Mullins' Brief at iv (sic).

At the outset, we observe that, in a largely indiscernible brief that struggles to comply with the briefing requirements detailed in our Rules of Appellate Procedure, *see* Pa.R.A.P. 2111-2140, Mullins fails to challenge the trial court's conclusion that he presented insufficient evidence to establish that Sands served alcohol to Shields while Shields was visibly intoxicated. ***See***

***Krebs v. United Refining Co. of Pa.***, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's

statement of questions involved is deemed waived under Pa.R.A.P. 2116(a)). In fact, in his reply brief, Mullins confirms that he "never made an attempt to prove to the jury that [Shields] was visibly intoxicated while she was served. . . . [Mullins] never raised this issue as part of his Rule 1925([b]) statement." Mullins' Reply Brief at 1. Even if Mullins had raised the issue of Shields' visible intoxication, we still would hold that he is not entitled to relief.

To establish liability under the Act, it is not sufficient for a plaintiff to establish merely that alcoholic beverages were served to a patron, or that the patron was intoxicated at the time he or she caused injury to another. **Fandozzi v. Kelly Hotel, Inc.**, 711 A.2d 524, 527 (Pa. Super. 1998), **appeal denied**, 735 A.2d 1269 (Pa. 1999). Rather, for dram shop liability to attach, evidence must be produced indicating that the patron was served alcohol at a time when he or she was visibly intoxicated. **Id.** To meet this standard, a plaintiff need not offer direct evidence of the patron's visible intoxication. **Id.** Instead, the plaintiff can prove dram shop liability through circumstantial evidence that an individual was served alcohol at a time when he or she was visibly intoxicated. **Id.**

Upon our review of the trial transcripts, we agree with the trial court's conclusion that Mullins "had presented insufficient evidence that Shields had been served while visibly intoxicated, and thereby presented insufficient evidence of a violation of the Dram Shop Act with respect to her." Trial Court Opinion, 3/10/17, at 16. The trial court reasoned that Mullins

had failed to produce any evidence upon which a jury could properly conclude that Shields had been served while visibly intoxicated. The only fact witnesses presented on the issue of service to Shields were [Mullins] and Christopher Lewis, the last bartender to serve [Mullins] and Shields on [Sands'] premises. [Mullins] himself was unable to offer any testimony which would support a finding that Shields was served while visibly intoxicated, and Mr. Lewis likewise did not testify that he observed Shields to exhibit signs of visible intoxication. In addition, the videotape played for the jury did not show Shields to display signs of visible intoxication.

*Id.* at 16-17. Accordingly, Mullins would not obtain relief on his third-party claim against Sands for injuries he suffered at the hands of Shields.

We now turn to the merits of this appeal. In so doing, we first address Mullins' argument that the trial court erred in concluding that the "no felony conviction recovery" rule ("felony rule") applied *sub judice*. **See** Mullins' Brief at 4-13. Our standard of review following the denial of a motion to remove a compulsory nonsuit is as follows: "This Court will reverse an order denying a motion to remove a nonsuit only if the trial court abused its discretion or made an error of law." **Brinich v. Jencka**, 757 A.2d 388, 402 (Pa. Super. 2000) (citation omitted), **appeal denied**, 771 A.2d 1276 (Pa. 2001). "Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason." **Miller v. Sacred Heart Hosp.**, 753 A.2d 829, 832 (Pa. Super. 2000) (internal citations omitted). The grant of nonsuit is proper where, having viewed all evidence in the plaintiff's favor, the court determines that the plaintiff has not established

the necessary elements of his cause of action. *Brinich*, *supra*; *see* Pa.R.C.P. No. 230.1.

It is settled that the felony rule "applies to discourage courts from assisting convicted felons in collecting damages that would not have occurred absent the criminal conviction." *Holt v. Navarro*, 932 A.2d 915, 920 (Pa. Super. 2007) (citing *Mineo v. Eureka Sec. Fire & Marine Ins. Co.*, 125 A.2d 612 (Pa. Super. 1956)), *appeal denied*, 951 A.2d 1164 (Pa. 2008). The *Holt* Court explained that "[t]he common law principle that a person should not be permitted to benefit by his own wrongdoing, particularly his own crimes, prevents a plaintiff from recovering losses which flowed from those criminal acts. *Id.*

In *Holt*, the plaintiff, William Holt, was committed to a hospital for a mental health evaluation. Holt escaped during an ambulance transfer. He ran to a shopping center and ultimately engaged in car jacking, striking the owner of the vehicle in the process. *Id.* at 918. He was convicted for robbery and simple assault, and sentenced to seven years' probation. Holt did not challenge his judgment of sentence. Holt then sued the hospital for negligently transporting him. He asserted that the criminal conviction that resulted from his escape caused him to suffer a reduced earning potential. *Id.* A jury awarded Holt $350,000.00. On appeal, this Court reversed the jury verdict, relying upon the felony rule. In so doing, we concluded that the damages Holt sought resulted directly from his convictions. We noted that Holts' "convictions for robbery, a second degree felony, and simple assault, a

second degree misdemeanor, are serious criminal offenses." *Id.* at 923. We determined "that, as a matter of law, [the hospital] cannot be liable for the collateral consequences of [Holts'] criminal convictions." *Id.*

In *Mineo*, two restaurant owners were convicted of burning down their restaurant. Shortly before the fire, the owners had purchased four insurance policies on the restaurant. After their arrest, they assigned their rights under the policies to a third party. *Mineo*, 125 A.2d at 614. The third party initiated an action against the insurance companies to recover damages caused by the owners' arson. Following trial, a jury returned a verdict in the third party's favor. On appeal, this Court was asked to determine whether an assignee of an insured can recover for damages caused by a fire that the insured was criminally convicted of setting. The *Mineo* Court concluded that "[t]he assignee in an assignment of a fire insurance policy made subsequent to a fire stands in the identical position of the insured and his rights cannot rise above the insured." *Id.* We explained in *Mineo* that to permit a person, who has been convicted of a serious crime, to collect damages that would not have occurred absent the criminal conviction is against public policy. We reasoned:

> The insureds have had their day in court with the opportunity to produce their witnesses, to examine and cross examine witnesses and to appeal from the judgment and to be acquitted unless the evidence established their guilt beyond a reasonable doubt.
>
> To now permit them to recover for the loss which they have been convicted of fraudulently causing would be against public policy. It would tend to destroy the confidence of the public in the efficiency of the courts; it would stir up litigation that would reopen tried issues; it would impress the public with the belief that the results of trials of the gravest nature were so uncertain that the innocent could not escape condemnation; and it would

> convince the public that the courts themselves have no confidence in the judicial processes. We are of the opinion that when one is convicted of a felony and subsequently attempts to benefit from the commission, the record of his guilt should be a bar to his recovery.

*Id.* at 617-18.

Instantly, based upon our review of the entire record, viewed in the light most favorable to Mullins, and consistent with **Holt** and **Mineo**, we are constrained to agree with the trial court's conclusion that the felony rule bars recovery for collateral damages Mullins allegedly suffered while incarcerated. As the uncontradicted evidence demonstrates *sub judice*, Mullins pleaded guilty to aggravated assault and, as a result, spent four years in prison. Mullins' claim that his incarceration caused him to suffer mental anguish, loss of reputation, and loss of past and future earnings is not actionable because the felony rule prevents him from recovering losses which directly flowed from his criminal acts. Differently put, the collateral damages that Mullins allegedly suffered resulted directly from his criminal conduct for which he pleaded guilty. Thus, applying the felony rule, Mullins may not benefit from his conviction for aggravated assault. Accordingly, the trial court did not abuse its discretion in granting nonsuit in favor of Sands.[2]

Judgment affirmed.

---

[2] Based upon our disposition of this appeal, we need not address Mullins remaining issues.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/18